ROBERTSON *v.* DOWNING.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 267. Argued April 27, 1888. — Decided May 14, 1888.

Under Rev. Stat. § 2907, and the act of June 22, 1874, c. 391, 18 Stat. 186, § 14, p. 189, as construed by the Treasury Department for many years without any attempt to change it or until now to question its correctness,

goods imported into the United States from one country which, in trans-
portation to the port of shipment pass through another country, are not
subject to have the transportation charges in passing through that other
country added to their original cost in order to determine their dutiable
value.

When there has been a long acquiescence in a Department Regulation, and
by it rights of parties for many years have been determined and adjusted,
it is not to be disregarded without the most cogent and persuasive reasons.

When after duties have been liquidated a reliquidation takes place, the date
of the reliquidation is the final liquidation for the purpose of protest.

Letters from the Secretary of the Treasury to a collector of customs, affirm-
ing an assessment of duty, and to an importer acknowledging the receipt
of his appeal from the collector's assessment, are admissible in evidence
to show that an appeal was taken.

The Treasury Department not having objected that an appeal was too early,
this court must assume that there was good reason for its action.

THIS was an action to recover duties alleged to have been
illegally assessed. Judgment for plaintiff. Defendant appealed.
The case is stated in the opinion.

*Mr. Solicitor General* for plaintiff in error.

No appearance for defendants in error.

MR. JUSTICE FIELD delivered the opinion of the court.

The plaintiffs below, the defendants in error here, in March,
1882, imported into the United States at the port of New York
5179 packages of steel rods from Mulheim, in Germany. They
were shipped at the port of Antwerp, in Belgium, to which
place they were brought by rail from Mulheim, where they
were made. Antwerp is distant from the frontier of Germany
between forty and fifty miles, and from Mulheim two hundred
miles. The appraisers added to the invoice price of the arti-
cles at Mulheim eleven marks per ton to make the dutiable
value of the articles, and four marks per ton for the charges
incurred in their transportation to Antwerp. Upon their ap-
praised value, including these charges, the defendant, who was
at the time collector of the port of New York, on the 5th of
May, 1882, ascertained and liquidated the duties. Subse-
quently, a reliquidation was made, by which two and one-half

per cent was deducted from the eleven marks. This reliquidation was completed on the 24th of May, 1882. Two days afterwards the plaintiffs made a formal protest against including in the dutiable value of the goods any sum for charges or otherwise in addition to the value stated in the invoice; but adding that they should pay the amount exacted, in order to get the goods, and then claim to have it refunded.

On the trial the plaintiffs put in evidence letters from the Acting Secretary of the Treasury, against the objection of the government, to show that an appeal was taken to the Secretary from the decision of the collector, and that it was affirmed. The counsel of the government excepted to their admission. The following are the letters:

"Treasury Department,

Office of the Secretary,

*Washington, D. C., August 14th,* 1882.

" *Collector of Customs, New York,*

" Sir: The department is in receipt of your letter of the 27th ultimo, submitting the appeal (1996, 2050 H) of Messrs. Downing, Sheldon & Co., from your assessment of duty on additions made by the appraiser to the invoice and entered value of certain steel wire rods imported by them per Hermann, March 9th, 1882.

" The appraiser reports that an addition was made by him for charges under the Department's decision of July 20th, 1880, (S. S. H 4617,) for the reason 'that the invoice did not state that the price of the merchandise was ' free on board,' and that an addition for value was also made by him to make the usual market value of the merchandise.

" Your assessment of duty thereon is hereby affirmed.

" Very respectfully, H. F. French,

*Acting Secretary.*"

"Treasury Department,
Office of Secretary,
*Washington, D. C., August* 12, 1882..

"Messrs. Downing, Sheldon & Co. (care of Kausche & Downing, P. O. box 3550, N. Y.):

"Gentlemen: This department is in receipt of your appeal, (No. 2050 H,) dated May 25, 1882, from the decision of the collector of the port of New York, assessing duty on certain merchandise, imported per Hermann, March 9, 1882.

"In reply, you are informed that the case has been disposed of by instructions this day addressed to the collector of customs at the port mentioned, to whom you are referred for particulars.

"Respectfully,     H. F. French,
*Acting Secretary."*

The decision of the Secretary was made August 12, 1882. The plaintiffs paid the amount of duties exacted, and in October following brought the present action. The jury found in their favor for $130.96. The court, by consent of parties, reduced this sum to $47.64, and judgment for that amount, besides costs, was entered. This reduction was made, as we infer from the record, so as to cover only the increased duties exacted by reason of the addition for charges on transportation to Antwerp.

The question of importance presented is whether, under the statute, charges for transportation of goods imported from one country, which on their passage may pass through another country, should be added to the invoice value of the articles to make their dutiable value under § 2907 of the Revised Statutes, and § 14 of the act of June 22, 1874. Section 2907 provides that "in determining the dutiable value of merchandise, there shall be added to the cost, or to the actual wholesale price or general market value at the time of exportation in the principal markets of the country from whence the same has been imported into the United States, the cost of transportation, shipment, and transshipment, with all the expenses

included, from the place of growth, production, or manufacture, whether by land or water, to the vessel in which shipment is made to the United States; the value of the sack, box, or covering of any kind in which such merchandise is contained; commission at the usual rates, but in no case less than two and a half per centum; and brokerage, export duty, and all other actual or usual charges for putting up, preparing and packing for transportation or shipment."

Section 14 of the act of June 22, 1874, 18 Stat. 189, provides " that wherever any statute requires that, to the cost or market value of any goods, wares, and merchandise imported into the United States, there shall be added to the invoice thereof, or, upon the entry of such goods, wares and merchandise, charges for inland transportation, commissions, port duties, expenses of shipment, export duties, cost of packages, boxes, or other articles containing such goods, wares, and merchandise, or any other incidental expenses attending the packing, shipping, or exportation thereof from the country or place where purchased or manufactured, the omission, without intent thereby to defraud the revenue, to add and state the same on such invoice or entry shall not be cause of a forfeiture of such goods, wares, and merchandise, or of the value thereof; but in all cases where the same, or any part thereof, are omitted, it shall be the duty of the collector or appraiser to add the same, for the purposes of duty, to such invoice or entry, either in items or in gross, at such price or amount as he shall deem just and reasonable, (which price or amount shall, in the absence of protest, be conclusive,) and to impose and add thereto the further sum of one hundred per centum of the price or amount so added; which addition shall constitute a part of the dutiable value of such goods, wares, and merchandise, and shall be collectible as provided by law in respect to duties on imports."

In the execution of these statutes the Treasury Department has heretofore uniformly construed them to apply, so far as inland transportation is concerned, only to such transportation where the place of the growth, production, or manufacture of the article is in the same country as the port from which

the vessel sails on which the shipment is made, and not where such transportation is through other countries to reach a place of shipment. Thus, in a decision rendered September 12, 1882, where goods were forwarded from Brodenbach, in Austria, to Hamburg, transshipped to Hull, and then placed on the import vessel, the journey to the United States being continuous, the appellants claimed that no charges accruing after the goods left Austria should be added to make dutiable value, and the Treasury Department sustained the claim, observing as follows:

"This claim seems to be well founded, in view of the long established practice in such cases, and of articles 434–444 of the Regulations of 1874, which provide in substance that in the case of merchandise imported from an interior country through the ports of another country, or from the country of its production, manufacture, or procurement *via* another country, no charges shall be added for transportation accruing after the departure of the merchandise from the country of production, if the collector shall be satisfied that the merchandise was exported from such country with a *bona fide* intention of having it transported to the United States."

A decision by the department, made some years before, also illustrates the construction when the two places, that of production and that of shipment, though separated from each other by water, belong to the same country. The charges for railroad and steamboat transportation of goods from Dundee, in Scotland, to Liverpool, in England, were added to the invoice price to make the dutiable value of the articles imported into this country. The importers objected to these charges, and cited article 441 of the Regulations of 1874, referred to in the above decision, in support of their claim; but the Treasury Department held that the regulation was applicable only where the goods were transported to some port of another country from the country of production for shipment to the United States, by a practically continuous voyage, and was not applicable to shipments from Scotland through England, which are, to all intents and purposes, the same country.

This construction of the Treasury Department we think a

sound one. It places articles which are the growth, product, or manufacture of countries whose ports of easy shipment are found in other countries through which the goods must be carried, on a basis of equality with the products of those countries which have convenient ports of shipment. To preserve this equality the shippers are not obliged to confine their shipments to their own ports, when ports of other countries would be equally or more convenient to them. This construction of the department has been followed for many years, without any attempt of Congress to change it, and without any attempt, as far as we are advised, of any other department of the government to question its correctness, except in the present instance. The regulation of a department of the government is not of course to control the construction of an act of Congress when its meaning is plain. But when there has been a long acquiescence in a regulation, and by it rights of parties for many years have been determined and adjusted, it is not to be disregarded without the most cogent and persuasive reasons. *United States* v. *Hill*, 120 U. S. 169, 182; *United States* v. *Philbrick*, 120 U. S. 52, 59; *Brown* v. *United States*, 113 U. S. 568, 571.

The technical objections taken by the government counsel we do not think tenable. The duties were not finally liquidated until the 24th of May, 1882. The time to protest did not begin to run until then. The previous liquidation on the 5th of May was necessarily abandoned by the corrections subsequently made. The letters of the Acting Secretary were sufficient evidence of the appeal from the decision of the collector. The question was not as to the contents of the appeal, but whether any appeal was taken. The acknowledgment of the Acting Secretary, who decided the matter appealed, was sufficient for that purpose, and also of the affirmance of the decision of the collector. The bill of exceptions also states when the decision of the Secretary was made. Of course that presupposes the receipt by him of the appeal. The date of " May 25th," in the letter of August 12, 1882, was evidently a misprint for " May 27th." But, if it were not so, the Treasury Department not having seen fit to place its decision upon the

ground that the appeal was too early, we must assume that there was good reason for its action.

*Judgment affirmed.*