### MAYES, Internal Revenue Collector, v. PAUL JONES & CO.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1921.)

No. 3440.

1. **Appeal and error** ⊗⟹1071(4)—**Separate findings of fact may be considered, though not on paper separate from opinion.**

    Where findings of fact are separately stated and numbered, and the entry of judgment expressly states that they are filed and made a part of the record, the objection that they are found in connection with the opinion, and not on a separate paper, is merely technical, and will not avail to prevent their consideration.

2. **Trial** ⊗⟹395(5)—**Findings held sufficient, and not open to objection as mere recitals of testimony.**

    A finding that prior to a specified date the revenue officers had ruled that the use of a particular filter for distilled spirits was not rectification, and that such ruling was acted on by plaintiff and other distillers and dealers, and findings of the facts admitted by the pleadings, the facts agreed on by a stipulation filed, and the facts testified to by a witness "with admitted accuracy," *held* sufficient, under Rev. St. § 649 (Comp. St. § 1587), as against the objection that they were mere recitals of the testimony.

3. **Appeal and error** ⊗⟹1071(1)—**That paragraphs of finding were not stated as separate findings held immaterial, when not prejudicial.**

    That each paragraph of one of the court's findings of fact was not separately numbered as a separate finding, as might have been done, was immaterial, where such failure could not possibly prejudice the rights of the party objecting to consideration of the findings.

4. **Trial** ⊗⟹388(5)—**Whether findings were made sua sponte or on request is immaterial.**

    It is immaterial whether the court made findings sua sponte or on request of counsel.

5. **Appeal and error** ⊗⟹934(1)—**Exceptions to judgment assumed to be on ground that facts found do not support it.**

    In an action in which there was no dispute as to the facts, and the question presented was purely one of law, though the exceptions to the judgment in the entry of judgment do not specifically state the grounds of objection, it will be assumed that they intended to challenge the judgment on the statutory ground that the facts found were not sufficient to support it, especially where the assignments of error aver that the judgment is against the law of the case on the undisputed facts recited therein.

6. **Appeal and error** ⊗⟹1008(2)—**Findings supported by evidence not subject to revision, when jury waived.**

    The court's findings on questions of fact, where a jury was waived, are not subject to revision by a reviewing court, if there was any evidence on which they could be made.

---

⊗⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Appeal and error ⊜⊃877(1)—Plaintiff in error not entitled to challenge sufficiency of special findings.**

Plaintiff in error cannot challenge the sufficiency of the special findings, under Rev. St. § 649 (Comp. St. § 1587), where, without such findings, no question would be presented within the authority of the court to review.

**8. Statutes ⊜⊃225¾—Adoption of statute referring to another adopts long-continued executive construction of such other statute.**

In adopting Act Oct. 3, 1917, § 304 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5986c), imposing a tax on distilled spirits, rectified, purified or refined, and referring to Rev. St. § 3244 (Comp. St. § 5971), for a definition of rectification, Congress is presumed to have known the long-continued executive construction given to section 3244, and to have known the rule of construction that the re-enactment of a statute previously construed by executive officers is an adoption of such construction, and the executive construction of section 3244 as to what constitutes rectification was therefore adopted by Congress, and cannot be changed by the Treasury Department or the courts.

**9. Constitutional law ⊜⊃77—Executive officers cannot change erroneous construction of statute, after it has been adopted by later legislation.**

While executive officers of the government may change their erroneous construction of a statute, though long followed, they may not do so after such construction has been adopted by Congress in enacting later legislation.

**10. Statutes ⊜⊃181(1)—Intention governs construction, and language controls, if intention can be ascertained therefrom.**

In construing a statute, the court must give full force and effect to the intent and purpose of the law-making power, and if this intent and purpose can be ascertained from the language of the statute, such language must control.

**11. Statutes ⊜⊃219—Construction by department charged with execution is of great weight.**

Where the meaning of a statute is doubtful, the construction given it by the department of the government charged with its execution should be given great weight, for the reason, among others, that, if such construction does not properly interpret the meaning and intent of Congress, Congress by amendment or re-enactment of the statute can readily correct it.

**12. Internal revenue ⊜⊃12—Executive construction adopted by Congress held not avoided by departmental ruling on somewhat similar matter.**

The long-continued executive ruling that the use of filters for distilled spirits, with which no force was used except that of gravitation, was not rectification, within Rev. St. § 3244 (Comp. St. § 5971), which was impliedly adopted by Congress in enacting Act Oct. 3, 1917, § 304 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5986c), was not avoided by a departmental decision that the use of another filter, consisting in forcing the liquid under pressure through a filter, was rectification.

**13. Internal revenue ⊜⊃12—Use of filter to remove extraneous substances not "rectification," "purifying," or "refining."**

The use of a filter which merely removes particles of charcoal and other extraneous substances from distilled spirits, and does not change the constituent elements in any respect whatever, is not "rectification," "purifying," or "refining," within Act Oct. 3, 1917, § 304 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5986c), imposing a tax on distilled spirits rectified, purified, or refined.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Rectification.]

---

⊜⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**14. Internal revenue ☞12—"Purifying" or "refining" of distilled spirits defined.**

"Purifying" or "refining," as used in Act Oct. 3, 1917, § 304 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5986c), relative to distilled spirits, means the removal, chemical change, or modification of objectionable soluble matter, held in solution in the spirits, united therewith, and forming a constituent and integral part thereof, so that its removal, chemical change, or modification will change or alter in some degree, at least, the character or quality of the entire volume of spirits.

In Error to the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Action by Paul Jones & Co. against T. Scott Mayes, Collector of Internal Revenue for the Fifth Collection District of Kentucky. Judgment for plaintiff (265 Fed. 365), and defendant brings error. Affirmed.

Miles J. Purcell, of Saginaw, Mich. (W. V. Gregory, U. S. Atty., and S. M. Russell, Asst. U. S. Atty., both of Louisville, Ky., on the brief), for plaintiff in error.

A. J. Carroll, of Louisville, Ky., for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. This is a proceeding in error to reverse the judgment of the United States District Court, Western District of Kentucky, in the case of Paul Jones & Co., successor of the firm of Paul Jones & Co., rectifiers and wholesale liquor dealers, to recover rectified spirits taxes assessed against that firm under the provisions of section 304 of the Act of October 3, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5986c), and paid under protest. By the agreement of counsel the cause was submitted to the court, without the intervention of a jury, upon an agreed statement of facts supplemented by oral evidence taken at the trial. The trial court found on the issues joined for the plaintiff, and entered judgment in its favor for the sum of $2,095.76, with interest thereon and cost of action.

It is insisted upon the part of the defendant in error that, as there were no requests on the part of either party for special findings of fact or rulings of law, and that the only objection in the entire course of the trial was made by plaintiff in error to the judgment, which objection was incorporated in the entry of judgment, that there is nothing for this court to review except errors in the exclusion or admission of evidence, and that, as no such error is claimed, the judgment should be affirmed without further consideration. In addition to the facts agreed upon by stipulation, there was but one witness testified. His testimony is entirely consistent with the agreed statement of facts, so that there is no conflict in the evidence and no dispute as to the facts. The question presented to the trial court was purely a question of law.

[1, 2] The court, however, did make four separate findings of fact, including the admission in the pleadings, and the facts agreed upon by stipulation. While these findings of fact appear under the title "Opinion and Findings of Fact," nevertheless they are not mere narrations

of facts in the opinion, but findings separately stated and numbered, and the entry of judgment expressly states that this "opinion and findings of fact" are filed and made a part of this record. The objection that they are found in connection with the opinion, and not upon a separate paper, is merely technical, and while parties are held to a reasonable strict conformity to the provision of the statute, a mere technical objection will not avail. It is further insisted, however, that even though the findings of fact are separately stated and numbered, and therefore easily distinguishable from and separate from the opinion itself, that nevertheless such findings do not meet the requirements of section 649, Revised Statutes, for the reason that they are mere recitals of the testimony. In support of this contention, counsel have cited Lehnen v. Dickson, 148 U. S. 71, 13 Sup. Ct. 481, 37 L. Ed. 373; Norris v. Jackson, 76 U. S. (9 Wall.) 125, 19 L. Ed. 608.

This objection, however, cannot possibly apply to the first, second, or third findings of fact. The first finding is certainly a definite finding of an ultimate fact, deduced from the evidence. The second incorporates the facts admitted by the pleadings. The third finding incorporates the facts agreed upon by stipulation of counsel. At first glance, it might appear that this objection is well taken as to that part of the fourth finding based upon the undisputed testimony of the only witness that testified in this case. Upon careful reading, however, it is apparent that this finding is not a mere recital of the testimony of the witness, Miller, but, on the contrary, a finding of specific facts established by his testimony, and which the court found to have been detailed by him "with admitted accuracy."

[3] While it is true that this fourth finding of fact is elaborate in detail, and that each paragraph thereof might have been separately numbered as a separate finding, yet the failure to do this cannot possibly prejudice the rights of the defendant in error, and is therefore of no importance. It also further appears that each and all of these facts so found by the court to be established by the testimony of Miller are essential to a full and complete understanding of the issues joined by the pleading in this case, and particularly the conduct and management of the business to which these issues relate. For the reasons above stated, this finding is not subject to the same objection and criticism as the finding in Lehnen v. Dickson and Norris v. Jackson, supra.

[4] It is of no importance whether the court made these findings sua sponte or upon request of counsel, nor is it important that these findings of fact appear in the opinion, for, notwithstanding that, they are separately stated and numbered, and ordered filed and made part of the record. O'Reilly v. Campbell, 116 U. S. 418–421, 6 Sup. Ct. 421, 29 L. Ed. 669; Philadelphia Casualty Co. v. Fechheimer, 220 Fed. 401–408, 136 C. C. A. 25, Ann. Cas. 1917D, 64.

[5] While the exceptions taken to the judgment, as appears in the entry of judgment, do not specifically state the grounds of objection, yet a reviewing court will assume the exceptions intended to and do sufficiently challenge this judgment on the statutory ground that the facts found were not sufficient to support it. Felker v. Bank, 196

Fed. 200–202, 116 C. C. A. 32; Casualty Co. v. Fechheimer, supra, 220 Fed. 410. This assumption is not only justified, but required by the five separate assignments of error, in which assignments it is averred that the judgment "is against the law of the case" upon the several undisputed facts which are recited in the separate assignments of error.

[6] For these reasons the record in this case does present the question of law as to the sufficiency of the facts found to support the judgment, but the court's findings upon questions of fact, a jury having been waived, are not subject to revision by a reviewing court, if there was any evidence upon which such findings could be made. Dooley v. Pease, 180 U. S. 126, 131, 132, 21 Sup. Ct. 329, 45 L. Ed. 457; Stanley v. Supervisors, 121 U. S. 547, 7 Sup. Ct. 1234, 30 L. Ed. 1000; Hathaway v. National Bank, 134 U. S. 498, 10 Sup. Ct. 608, 33 L. Ed. 1004; St. Louis v. Rutz, 138 U. S. 241, 11 Sup. Ct. 337, 34 L. Ed. 941; Runkle v. Burnham, 153 U. S. 225, 14 Sup. Ct. 837, 38 L. Ed. 694; Chautauqua Institution v. Zimmerman, 233 Fed. 371–375, 147 C. C. A. 307 (C. C. A. 6).

[7] The plaintiff in error, of course, cannot challenge the sufficiency of these special findings to meet the requirements of section 649, R. S. (Comp. St. § 1587), for without these findings there would be no question presented that this court would have authority to review.

An examination of the bill of exceptions, which is substantially the same as the finding of facts of the court, discloses that not only was there "evidence upon which such findings could be made," but also that there is no conflict in the evidence upon which these findings are based. The facts found by the court are as follows:

"(1) That prior to date in the year 1919 the ruling of the revenue officers had been that the use of the Karl Kiefer filter, as plaintiff used it, was not rectification, and that said ruling was acted upon by plaintiff and other distillers and dealers up to the promulgation in 1919 of the new ruling hereinbefore copied." [1]

"(2) What we have shown to have been admitted by the pleadings." [2]

"(3) What we have shown to have been agreed upon by the stipulation filed." [3]

---

[1] The new ruling referred to in this finding reads as follows:

"The straining of distilled spirits through cotton, cotton cloth, or any other material for the purpose of removing therefrom particles of charcoal or any other extraneous matter whatsoever in the liquid, on the premises of a wholesale or retail liquor dealer, without payment by such dealer of special taxes as rectifier of distilled spirits, will not be permitted.

"The use of what is commonly known as a 'hat filter' by any such dealer, without payment of special tax as a rectifier of distilled spirits, is hereby prohibited, and all Treasury Decisions or parts of Treasury Decisions in conflict with this ruling are hereby expressly revoked."

[2] The defendant admits in his answer to the petition that the assessment of 15 cents per gallon was made upon 13,971.79 proof gallons of whisky, amounting to $2,095.76, by the Commissioner of Internal Revenue, and certified to this defendant for collection, and that this defendant did collect the same, and that the payment thereof was by the plaintiff made under protest, and a claim for the refund of same was made on form 46, and denied, all in substantially the manner set out in the petition.

[3] The stipulations are as follows:

"First. The plaintiff is the successor of the firm of Paul Jones & Co., and is the owner of all of the assets of said firm, including the claim sued on herein, and is entitled to maintain this action.

"Second: Said firm was authorized to conduct business as a wholesale

"(4) The statement of the witness Samuel C. Miller, who detailed the facts with admitted accuracy as follows: [4]

"Furthermore, it is a matter of common knowledge, and therefore judicially known, that when whisky (all the spirits involved herein being whisky) is distilled it. is put into barrels to be kept in warehouses. There it may re-

---

liquor dealer and rectifier, and had paid to the United States all stamp and license taxes imposed on wholesale liquor dealers and rectifiers which had been assessed against it.

"Third. Said firm of Paul Jones & Co. owned and had in its possession and on its premises in Louisville, Ky., what is known as a Karl Kiefer multiple perfection single plate pulp filter.

"Fourth. The 13,971.79 gallons of whisky mentioned in the petition was straight whisky taken from a government bonded warehouse in the original barrels in which it had been placed by the distiller, and was removed from said bonded warehouse to the premises of Paul Jones & Co. in Louisville, Ky. Said 13,971.79 gallons of whisky were run through the Karl Kiefer multiple perfection single plate pulp filter mentioned above, directly from the barrels in which it had been originally placed by the distiller; that no other spirits, wine, liquor, materials, or substance of any sort or character were added to said whisky, and all taxes due thereon, except the tax of 15 cents per gallon mentioned in the petition, were paid, and said whisky was labeled and sold as straight whisky.

"Fifth. The identical filter used by Paul Jones & Co. for the purpose of straining the whisky above mentioned has been used for many years by practically every distiller in the United States on the distillery premises for the purpose of straining whisky, and such whisky, after being run through said filter, has been bottled in bond, under the supervision of officers. of the United States, as straight whisky, and labeled and sold as such.

Sixth. The tax sought to be recovered herein was paid under protest by Paul Jones & Co., and all necessary procedure was taken, as directed by law, so as to entitle Paul Jones & Co., to recover back said money, in case the same should be decided to have been illegally exacted."

[4] "I was a member of the firm of Paul Jones & Co., and am now vice president and general manager of Paul Jones & Co., a corporation, which is the successor of the firm. I have been actively engaged in the business of wholesale liquor dealer and rectifier for more than 25 years, and in that time I have had a wide experience in the purchase and sale of straight whisky and the rectifying and sale of rectified whisky.

"The 13,971.79 gallons of whisky mentioned in the petition was purchased by Paul Jones & Co., direct from the distiller and was removed from the government bonded warehouse to the premises of Paul Jones & Co., in Louisville, Ky. The whisky was contained in approximately 34 barrels and was all the same whisky. All of said whisky contained in said barrels was strained through a Karl Kiefer filter and the barrels from which the whisky was emptied were on the floor above that on which the filter was located and the only pressure was that of gravity from this weight and height. The whisky was run directly from the barrels into the filter and was bottled directly from the filter when it ran out of same. The whisky flowed through the filter by gravity and no pressure of any sort was applied to force the whisky through the filter. The sole purpose of straining the whisky through the filter was to remove from the whisky the loose particles of charcoal coming from the inside of the charred barrels in which it was originally placed by the distiller.

"When the whisky came out of the filter and was bottled it was precisely the same as when it went into the filter, except that the loose particles of charcoal had been removed. The alcoholic contents of the liquor had not been changed; the chemical quality had not been changed; the quantity had not been changed; the proof had not been changed; the flavor had not been changed; the color had not been changed. The whisky was bottled, labeled, and sold as straight whisky with the full knowledge of the government. In case cloudy whisky is run through a Karl Kiefer filter, the filter will not

main for eight years, largely in order to complete the process of manufacture, but also in order to secure the taxation thereon due to the United States. It may be removed from the warehouse in less time, if the owner elects to remove it, upon payment of the taxes thereon. The barrels used and into which tne whisky is put after distillation are charred on the inside by fire applied to the staves. Particles of the charcoal resulting from this process may, during the long period of warehousing, be separated from the staves, and may drop from them into the spirits. The presence of this charcoal in the whisky in no appreciable way adds to the volume of the spirits, and in no way changes the nature or property of the whisky. Equally its presence there adds nothing to the value of the merchandise, and only abnormal quantities would depreciate their value. Nevertheless, without any abnormality, it is desirable that particles of charcoal, if coming into the spirits, should be removed by the filter used by nearly all wholesale dealers for that purpose. The filtering removes this foreign substance, but in no way changes the nature of the spirits or imparts to them any other quality whatever. These facts being perfectly well known to the government and its officers, it became under their supervision and with their knowledge and consent the custom of many years' standing to construe the process of filtering as in no way rectification, if the purpose of it was solely that of removing extraneous substances like charcoal. This contemporaneous construction of the statute, as evidenced by the almost universal custom thereunder, was continued in force until in 1919, when the new ruling hereinbefore referred to was announced by the Commissioner of Internal Revenue."

[8] Section 304 of the Revenue Act of October 3, 1917, imposes a tax of 15 cents on each proof gallon of distilled spirits or wines hereafter rectified, purified, or refined in such manner, and on all mixtures hereafter produced in such manner that the person so rectifying, puri-

---

clarify the whisky. At the time the whisky in question was run through the Karl Kiefer filter, Paul Jones & Co. had paid special tax as a wholesaler and rectifier.

"The Karl Kiefer filter is a closed receptacle and contains about 16 separate filtering surfaces. Each of the filtering surfaces consists simply of a pulp about one-fourth inch in thickness through which the whisky runs. The density of this pulp could be regulated and this could not be done in a hat filter. A Karl Kiefer filter and a hat filter will remove any matter in suspension from whisky. The same whisky only runs through one of such filtering surfaces; each of the filtering surfaces being connected with the outlet pipe by a separate tube through which the whisky flows.

"For many years what is known as a hat filter has been used by Paul Jones & Co. and by other wholesale liquor dealers and rectifiers for the purpose of straining whisky. A hat filter consists of a heavy piece of felt, approximately the same as is used in making felt hats, and the felt is made in the shape of a large hat. Whisky is run into this hat and strains through the felt, so as to remove loose particles of charcoal and other matters in suspense from the whisky. The representatives of the government had never objected to the use of a hat filter, and it was never claimed that the use or possession of such a filter subjected the person using same to payment of any license or other tax or to any penalty whatsoever. I do not know whether or not the presence of a Karl Kiefer filter on the premises of a dealer other than a distiller made the dealer liable to tax as a rectifier under the rulings of the department. The hat filter performs precisely the same function as is performed by the Karl Kiefer filter; that is, each of said filtering mediums merely remove from whisky the loose particles of charcoal contained in the whisky, and in no manner changes the form or substance of the whisky.

"The only reason for using a Karl Kiefer filter, instead of a hat filter, is because the former is more convenient. A hat filter being uncovered, some of the whisky is apt to overflow and be lost, making constant watching necessary. In addition, a hat filter sometimes gets clogged by the charcoal re-

fying, refining, or mixing the same is a rectifier within the meaning of section 3244, Revised Statutes (Comp. St. § 5971). It therefore becomes necessary to examine the provisions of section 3244, R. S., in order to determine the exact scope and effect of this section to the Revenue Act of October 3, 1917. The third subsection of that act provides that:

"Every person who rectifies, purifies, or refines distilled spirits or wines by any process other than by original and continuous distillation from mash, wort, or wash, through continuous closed vessels and pipes, until the manufacture thereof is complete, and every wholesale or retail liquor dealer who has in his possession any still or leach tub, or who keeps any other apparatus for the purpose of refining in any manner distilled spirits, and every person who, without rectifying, purifying, or refining distilled spirts, shall, by mixing such spirits, wine, or other liquor with any materials, manufactures any spurious, imitation, or compound liquors for sale, under the name of whisky, brandy, gin, rum, wine, spirits, cordials, or wine bitters, or any other name, shall be regarded as a rectifier, and as being engaged in the business of rectifying: * * * Provided, that nothing in this section shall be held to prohibit the purifying or refining of spirits in the course of original and continuous distillation through any material which will not remain incorporated with such spirits when the manufacture thereof is complete."

This is the only part of section 3244 applicable to the finding of facts in this case. It appears from the findings of fact that—

"Prior to date in the year 1919, the ruling of the revenue officers had been that the use of the Karl Kiefer filter, as plaintiff used it, was not rectifica-

moved from the whisky and must be cleaned. A Karl Kiefer filter works more rapidly than a hat filter, as it has a number of separate filtering surfaces, each performing the same function as a hat filter, and, having a cover over the top, there is less danger of the whisky overflowing.

"A representative of the government was at all times stationed on the premises of Paul Jones & Co., and all of the acts and transactions of Paul Jones & Co. were done for many years under the direct supervision of a representative of the government.

"When Paul Jones & Co., purchased the 34 barrels of whisky in question from the distiller, a requisition was made upon the government for permission to remove said whisky from the bonded warehouse to the premises of Paul Jones & Co. Said requisition was made by Paul Jones & Co., in their capacity as wholesale liquor dealers, and not as rectifiers, the application having been made on form 92, a copy of which has been filed in the record. When it is the intention to withdraw whisky from a bonded warehouse for the purpose of rectifying same, the requisition is made upon the form also filed in the record, and which shows that the whisky is withdrawn for the purpose of rectification.

"There is marked distinction between straight whisky and rectified whisky. This distinction has been generally and uniformly recognized and understood for many years by all distillers, wholesale and retail liquor dealers, rectifiers, and the public at large.

"Straight whisky, as so generally known and understood, is unmixed spirits, distilled from grain, and aged in charred oak barrels, and without having any other spirits, materials, or substances added thereto; that rectified whisky is manufactured or compounded by adding to straight whisky or neutral spirits other materials or substances, for the purpose of changing the chemical quality, color, flavor, or quantity of same; that rectified whisky is cheaper than straight whisky, and the margin of profit in the sale of rectified whisky is ordinarily much larger than the margin of profit in the sale of straight whisky."

tion, and that said ruling was acted upon by plaintiff and other distillers and dealers up to the promulgation in 1919 of the new ruling."

It has been repeatedly held by the Supreme Court of the United States that, where the meaning of a statute is doubtful, the construction given by the department charged with its execution should be given great weight. Robertson v. Downing, 127 U. S. 607, 8 Sup. Ct. 328, 32 L. Ed. 269; U. S. v. Healey, 160 U. S. 136, 16 Sup. Ct. 247, 40 L. Ed. 369. It has also been held by the Supreme Court that—

"The re-enactment by Congress, without change, of a statute which had previously received long-continued executive construction, is an adoption by Congress of such construction." U. S. v. Hermanos, 209 U. S. 337–339, 28 Sup. Ct. 532, 533 (52 L. Ed. 821); U. S. v. Falk, 204 U. S. 143–152, 27 Sup. Ct. 191, 51 L. Ed. 411.

This rule of interpretation applies with full force to this case, for the reason that section 304 of the Revenue Act of October 3, 1917, provides that the tax shall be levied only upon distilled spirits and mixtures produced in such manner that the person so rectifying, purifying, refining, or mixing the same is a rectifier within the meaning of section 3244, R. S.

Congress is presumed to have known the long-continued executive construction given to paragraph 3 of section 3244, R. S., when it enacted this Revenue Act of October 3, 1917. It is also presumed to have known the rule of construction announced by the Supreme Court in U. S. v. Hermanos and U. S. v. Falk, supra. Buckley v. Stephens, 29 Ohio St. 620–622. The conclusion follows that it intended to adopt this construction as fully and completely as if it had written it into the act itself.

[9] It is contended, however, on the part of the United States government, that it is not precluded from a change in construction by reason of a prior erroneous construction of a statute, although that erroneous construction has long been followed by the executive officers charged with the administration of the law. Undoubtedly that contention is correct as an abstract proposition. If there had been no later legislation upon this subject than the third subsection of section 3244, R. S., the Treasury Department, in the absence of judicial interpretation, would be at liberty to make such change in prior construction from time to time as would seem to it necessary to carry into effect the purpose and intent of the law; but if by the Revenue Act of October 3, 1917, Congress has adopted a long-continued executive construction given to paragraph 3 of section 3244, R. S., the Treasury Department is no longer at liberty to change that construction.

[10] In the construction of a statute it is the duty of the court to give full force and effect to the intent and purpose of the law-making power responsible for its enactment. If this intent and purpose can be ascertained from the language of the statute itself, then that language must control. U. S. v. Alamogordo Lumber Co., 202 Fed. 700, 121 C. C. A. 162; Scheu v. State, 83 Ohio St. 146, 93 N. E. 969; Slingluff v. Weaver, 66 Ohio St. 621, 64 N. E. 574.

[11] But where the meaning of a statute is doubtful, the construction given it by the department charged with its execution should

270 F.—9

be given great weight, for the reason, among others, that if such construction does not properly interpret the meaning and intent of Congress, Congress, by amendment or re-enactment of the statute, can readily correct the same. This presumption that the department charged with the execution of the law has properly interpreted it is strengthened in proportion to the length of time such construction has obtained without challenge by the law-making power, so that, where such executive construction has been long continued, a court has a right to presume that Congress is content therewith. This exhausts the full force and effect of such construction, and, while not binding upon a court, nevertheless a court will be slow to depart therefrom, unless the language of the statute itself absolutely requires it to do so.

But, when a court has adopted such construction, it is not in the power or authority of the executive department to change or alter that construction. Congress alone has the power to change that construction by amendment of the statute itself. It follows, therefore, when Congress has adopted an executive construction of a statute, that neither the department charged with its execution nor the courts are at liberty to depart from that construction.

In this case Congress, by the Revenue Act of October 3, 1917, has, by reference thereto, specifically adopted the long-continued executive construction given to paragraph 3 of section 3244, R. S., by the Treasury Department, so that neither that department, nor this court, or any other court, has authority to change or ignore that construction, or to substitute its own purpose and intent for the purpose and intent of the law-making power.

While it does not appear in the finding of fact nor in the bill of exceptions, counsel for both plaintiff and defendant in error discuss in their printed briefs the effect of Treasury Decision 19060, in reference to the Loew filter, and it is contended on the part of plaintiff in error that this decision applies to any mechanical form of filter, including the Karl Kiefer filter.

From this decision it appears that the essential feature of the Loew filter consists in forcing the liquid, under pressure, through a closely packed pulp, and that a wholesale or retail dealer using the same became a rectifier, within the contemplation of the third subsection of amended section 3244, R. S.; that if there is any inconsistency or conflict between this decision and the prior executive construction of the statute in reference to the hat filter, or the Kiefer filter, that this conflict has been resolved by the department subsequent to the passage of the act of 1917, in Treasury Decision 2953, whereby it has treated hat filters in the same way as mechanical filters, and has therefore recognized that both are used in the process of rectifying under Revised Statutes, § 3244.

For the reasons heretofore stated, Treasury Decision 2953, in relation to the hat filter, promulgated subsequent to the passage of the act of 1917, can in no wise affect the construction and interpretation of that act, for if Congress adopted the long-continued executive construction in reference to the hat filter and the Karl Kiefer filter, the Treasury Department must accept that construction as final.

However, it further appears from the finding of facts that this Treasury Decision 19060 applied specifically to the Loew filter, and to other forms of mechanical filters in which the liquid is forced by pressure through a closely packed pulp.

[12] The trial court found as a fact that the Karl Kiefer filter uses no force whatever, except the force of gravitation, the same as in a hat filter; that it performs precisely the same function as a hat filter, and that the only reason for using a Karl Kiefer filter, instead of a hat filter, is because the former is more convenient; that the Karl Kiefer filter has a cover over the top to prevent the whisky from overflowing, and will operate much more rapidly than a hat filter. It also appears from the finding of fact that, notwithstanding Treasury Decision 19060, the use of the Karl Kiefer filter, as plaintiffs used it, was not "rectification," under the ruling of the Revenue Department prior to the year 1919, when the new ruling was promulgated in that year, so that, if Treasury Decision No. 19060 appeared in the bill of exceptions and findings of fact, it could not avoid the effect of long-continued executive ruling in reference to the hat filter and the Karl Kiefer filter prior to and subsequent to the promulgation of that decision and up until the new ruling of 1919.

[13] If, however, it were conceded that Congress, by the Revenue Act of October 3, 1917, had not under the settled rules of construction adopted the long-continued executive construction that obtained prior to that date, the findings of fact by the trial court would necessarily require this court to do so.

It appears from these findings that the use of the hat filter or the Karl Kiefer filter does not change the constituent elements of the whisky in any respect whatever. It is identically the same after the filtering process as before, except that the particles of charcoal and other extraneous substances, if any, have been removed therefrom. It is still "straight," not "rectified," whisky, and is bonded, labeled, and sold as such. In the case of Wampole v. U. S., 191 Fed. 573-678, 112 C. C. A. 633, 636 (C. C. A. 3), it was held that—

"Rectification of distilled spirits, in the legal sense, means any process, exclusive of original and continuous distillation * * * by which the spirits are separated from the substance with which it is mixed or combined. The rectifier may take the raw spirit of the distiller and, by repeated processes of distillation, separate the spirit from the oils and impurities left in it by the distiller; or he may take the refuse material of the manufacturer of ginger or vanilla extract, saturated with alcohol, and by distillation separate the spirit from that material."

This definition taken in connection with the definition in the case of Michel v. Nunn (C. C.) 101 Fed. 423, in reference to mixed or blended whiskys, would seem to cover fully and completely the entire definition of "rectification" and "rectifier," and it necessarily follows therefrom that the use of either a hat filter or Karl Kiefer filter for the sole and only purpose of removing particles of charcoal from straight whisky is not rectification within the meaning of this act.

It is insisted, however, that this revenue act is not directed solely to rectified or blended whisky, but also includes distilled spirits that have been refined or purified by any process other than original and

continuous·distillation, and that the removal of this charcoal from the distilled spirits constitutes "purifying" and "refining" within the meaning of the act.

We are of the opinion, however, that the terms "purifying" and "refining," as used in the Revenue Act of October 3, 1917, and in paragraph 3, section 3244, R. S., mean something more than the removal of nonsoluble particles of charcoal that perchance may become loosened and detached from the charred staves of the barrels in which the distilled spirits are aged. The method of removing these particles is not important, provided that method has no further purpose or effect. The larger particles might readily be removed by hand, and perhaps with time and patience all of them, regardless of size, might be so removed. While that method would not be practical, yet the fact that it is possible demonstrates that the removal of these particles of charcoal does not affect the character or the quality of the liquor itself, and that they are no component part thereof.

[14] "Purifying" or "refining," as used in these statutes, undoubtedly means the removal, chemical change, or modification of objectionable soluble matter, held in solution in the distilled spirits, united therewith and forming a constituent and integral part thereof, so that its removal, chemical change, or modification will change or alter, in some degree, at least, the character or quality of the entire volume of the distilled spirits.

For the reasons above stated, the judgment of the District Court is affirmed.