UNITED STATES *v.* GODCHAUX SUGARS, INC. (No. 2209).[1]

1. RELIQUIDATION—TIMELINESS OF PROTEST.

A reliquidation is for the purpose of correcting mistakes or errors either of fact or law, and the collector may, in the absence of a protest and within a year, reliquidate, whether the reliquidation raises or lowers the duties assessed.—Section 3, paragraph N, tariff act of 1913; section 21, act of June 22, 1874 (18 Stats. 190). Liquidation was made against the importer May 1 and reliquidations for him December 10 and against him December 31. Protest within 30 days from the last liquidation was timely, notwithstanding that none had been filed against the first.

2. NORIT RETORT—SUGAR MACHINERY.

A retort used for the purpose of reclaiming norit, which is a carbon substance employed in the purification of sugar, is entitled to free entry as sugar-manufacturing machinery under paragraph 391, tariff act of 1913, rather than dutiable as a miscellaneous manufacture of metal under paragraph 167.

United States Court of Customs Appeals, May 31, 1923.

APPEAL from Board of United States General Appraisers, G. A. 8561 (T. D. 39227).

[Affirmed.]

*William W. Hoppin,* Assistant Attorney General (*Samuel M. Richardson,* special attorney, of counsel), for the United States.

*Robert E. Milling* (*Irving Washburn* of counsel) for appellee.

---

[1] T. D. 39678.

[Oral argument March 22, 1923, by Mr. Richardson and Mr. Milling.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise in this case is called a carbon or norit retort and is claimed to be entitled to free entry as machinery for use in the manufacture of sugar under paragraph 391 of the tariff act of 1913. It was classified by the collector in the first instance and held dutiable under paragraph 167 of the same act as a manufacture of metal not specially provided for. It will be later hereinafter more specifically described.

The following is a chronological statement of the proceedings touching the entry and liquidations:

April 8, 1920, the merchandise was entered at the port of New Orleans as free of duty under said paragraph 391.

May 1, 1920, it was classified by the collector and the entry liquidated under paragraph 167, but the duty was not paid nor was any protest then filed by importer because of the oversight or negligence of its attorney who had charge of the matter.

December 10, 1920, the collector reliquidated the entry, classifying the merchandise as free under paragraph 391.

December 31, 1920, the collector at the direction of the Secretary of the Treasury again reliquidated, classifying the merchandise as dutiable under paragraph 167.

January 14, 1921, the importer paid the duty thus assessed and filed his protest, which was of course within 30 days from the reliquidation.

It appears that on or about September 14, 1920, the Treasury Department held that a similar machine, apparently imported and entered later than the one involved in this case, was entitled to free entry, and the collector of customs at New Orleans, being cognizant thereof and also being of opinion that he had the right so to do, made his reliquidation of December 10.

October 28, 1920, the Treasury Department advised the collector that in the absence of a protest seasonably made after the liquidation of May 1, 1920, there was no authority of law for reliquidating the entry under paragraph 391.

December 16, 1920, the department in a letter to the collector again expressed its opinion that the liquidation of May 1, 1920, was conclusive against the importers and that the subsequent reliquidation, free of duty or with a reduction of duties, was not authorized by law, and directed him to reliquidate the entry under paragraph 167 "leaving the importers to their remedy by protest if dissatisfied." Thereupon the collector made the reliquidation

of December 31, against which the importer, as stated, duly filed its protest.

The record contains copies of various letters written by attorneys on behalf of the importer both to the collector of customs at New Orleans and to the Treasury Department and replies thereto in which other letters referring to the matter from others prominent in official life are mentioned, but particular reference thereto is unnecessary.

Section 3, paragraph N, of the tariff act of 1913, among other things provides that the decision of the collector as to rate and amount of duties chargeable upon imported merchandise shall be final and conclusive against all persons interested therein, unless the owner, importer, etc., pays the duties assessed and within 30 days after the ascertainment thereof files his protest.

Section 21 of the act of June 22, 1874 (18 Stats. 190), conceded to be in force, provides that whenever duties upon imported merchandise shall have been liquidated and paid and the goods delivered to the importer, such settlement of duties shall, after the expiration of one year from the time of entry, in the absence of fraud and in the absence of protest, be final and conclusive upon all parties.

At the hearing of the protest before the Board of General Appraisers the Government moved to dismiss the protest on the ground that by virtue of the provisions of said paragraph N unless the importer filed his protest within 30 days of the liquidation of May 1 such liquidation was conclusive as to it, and that under said section 21 of the act of 1874 the collector was without authority in this case, in the absence of such protest, to reliquidate the entry in favor of the importer; in other words, that the reliquidation of December 10 was unlawful, and that hence, there having been no protest against the first liquidation, the protest was too late and should be dismissed, and that is its contention here.

The Government also claims that within the time provided therefor in the act of 1874, in the absence of protest, the collector had authority to reliquidate in favor of the Government—that is, by increasing the rate or amount of duty—but that thereunder no reliquidation could be made which diminished the rate or amount of duty, the former being termed a reliquidation upward and the latter a reliquidation downward. As the reliquidation of December 10 was a downward reliquidation, it claims that it was unlawful, and in this connection claims that the liquidation of May 1 is the only lawful liquidation in this case, and that, as it was not protested, there is no pending protest to consider.

That prior to the enactment of the act of 1874 there was no limitation as to time of the power of the collector to reliquidate seems well established.—United States *v.* Phelps et al. (17 Blatch. 312); Federal

cases, 16039; United States v. Calhoun (184 Fed. 510); Hawley & Letzerich v. United States (3 Ct. Cust. Appls. 456; T. D. 33037).

In the first of these cited cases the opinion discloses that there were at least three liquidations, the second being downward in favor of the importer and the last upward in favor of the Government and for the same amount as the first liquidation, and against it there was no protest. The court held that the last liquidation was conclusive and that in a suit brought by the Government to recover the difference between the amount thereof and the amount already paid by the importer such final reliquidation was, in the absence of protest by the importer, conclusive upon him.

The Government relies somewhat upon part of the language of that decision that under "Section 2931 of the Revised Statutes there was no limitation imposed on the power of the collector to reliquidate when such reliquidation was in the interest of the Government."

Said section 2931 contained provisions similar in principle to those of paragraph N of the present statute relating to protests, but thereunder the remedy of an importer was by suit against the collector if the Secretary of the Treasury upon appeal to him from the action of the collector rendered a decision adverse to importer's claim.

In an earlier part of the opinion, however, discussing the same section, the court said: "There is nothing in the section which forbids a reliquidation or a new decision by the collector even after the payment of all the duties fixed by prior liquidation, or even after the refunding of money deposited beyond the duties so fixed; or which forbids a new decision by the collector as to the law on the same facts or a new decision as to facts, based on additional or new or different facts," saying that this view was confirmed by the provisions of section 21 of the act of June, 1874.

Considered as a whole, we find nothing in this opinion that limits the collector to a reliquidation upward. A reconsideration of the law or of the facts or of new facts which, says the court, the collector may review, is equally suggestive of his right to reliquidate downward as well as upward. The right of the Government and the duty of its officials has always been to assess the lawful rate and collect the legal amount of duties on importations, and it is for the interest of the Government to do this, nothing more and nothing less.

In Robertson v. Downing (127 U. S. 607) the importer brought into this country steel rods. The appraisers added to the invoice price of the articles the cost of transportation from the place of production to the place of shipment to make the appraised value of the importation, and upon that value the collector on the 5th of May ascertained and liquidated the duties. He subsequently, on the 24th day of May, made a reliquidation by which $2\frac{1}{2}$ per cent was deducted from a part of the said cost of transportation, which had been added by the appraisers and on which liquidation had first been made. Two days

after this reliquidation importer protested. The Secretary of the Treasury decided against the claim in the importer's protest and the latter in due course brought suit, which was the method by which he could then obtain relief under the law. The statute in force provided that the importer's protest should be filed within 10 days after the ascertainment and liquidation of the duties. Upon the trial of the action the jury found in favor of the plaintiff, the importer, and the case went to the Supreme Court for review.

In its opinion the court said that the question of importance presented related to the right to add certain transportation charges in the foreign country to the invoice value of the articles, and held that in view of the applicable statute and the practice importer was entitled to recover upon the judgment.

It appears that in the brief made in behalf of the Government before the court in that case the Solicitor General called attention to the fact that under section 2931 of Revised Statutes then in force notice of protest should be given within 10 days after ascertainment and liquidation of duties; that the appeal to the Secretary of the Treasury should be taken within 30 days thereafter and suit brought within 90 days after his decision. The brief pointed out that it was incumbent upon the plaintiff to establish affirmatively each of these facts by evidence; that the first default to comply with the statutes raised by the bill of exceptions was with reference to the protest; that the duties were liquidated by the collector May 5; that the notice of protest was given May 26; that the collector after inquiry about the discount made the reliquidation of May 24, and the Solicitor General pointed out that if the date of the giving of the notice of protest ran from the last liquidation it was in time, but if it ran from the first liquidation it was late, and submitted whether these facts affected the importer's right of recovery.

The Supreme Court, without entering into any discussion thereof, said: "The technical objections taken by the Government counsel we do not think tenable. The duties were not finally liquidated until the 24th of May, 1882. The time to protest did not begin to run until then. The previous liquidation on the 5th of May was necessarily abandoned by the corrections subsequently made."

It is quite apparent that the second liquidation was downward, and if in view of what has been stated this opinion be regarded as holding the same to be lawful, it is controlling against the Government's contention here.

But the Government argues from the fact that the precise question of the right of the collector to reliquidate downward was not *discussed* by the court, that the case can not be considered as authority on this point. With this we must disagree. The facts were before the court. They were called to its attention specifically by the brief

of the Solicitor General, and so far as appears the only technical questions in the case arose therefrom.   When the court said that the reliquidation of May 24 was an abandonment of the one of May 5 we think it necessarily follows that the court considered that the collector had a right to make the reliquidation although in the importer's favor.   The fact that no discussion was indulged does not alter the case, because the court will be presumed to have considered all things necessary to reach its decision and to have been aware of the fact that, if the reliquidation was not valid and the protest should have been filed within 10 days from the first liquidation, the importer could not recover.

In Sgobel & Day v. Robertson (126 Fed. 577) the collector at first liquidated May 10 and then reliquidated August 23 following for the purpose of allowing damages claimed by the importer who had filed no protest against the first liquidation.   He duly protested the reliquidation and it was conceded that the only controverted question was whether the protest was filed in time or not.   So good an authority on customs law as Judge Lacombe flatly held that the precise point was before the Supreme Court in Robertson v. Downing, supra, and as he said "flatly passed upon," and, relying upon it as authority, he sustained the importer's contention.

The opinion of the Supreme Court was rendered in 1888.   The case before Judge Lacombe was decided in 1893.

In T. D. 14446, dated October 28, 1893, the Treasury Department in a letter to the collector of customs of New York called attention to the fact that in the last cited case the collector had rejected and disallowed the protest solely on the ground that it had not been filed within 10 days after the original liquidation of duties and that the sole question in the case was whether the protest had been filed within the time required by law.   The department further stated that the matter had been called to the attention of the Attorney General and that officer had advised the department that no appeal or writ of error would be taken from the judgment of the court in the case.   The department thereupon directed the collector to take measures to pay the judgment.

In T. D. 15309 (G. A. 2743), decided by the Board of General Appraisers in 1894, it appeared that the entry was originally liquidated January 28, 1893, to which no protest was filed; that February 27 following the collector voluntarily reliquidated for the purpose of making a reduction in favor of importer.   This did not satisfy importer, and he thereupon protested the reliquidation within the time provided by statute, but it was not a seasonable protest to the original liquidation.

The board held that the decision of Robertson v. Downing, supra, and Sgobel & Day v. Robertson, supra, were in point and that the protest was in time.

In T. D. 17436 (G. A. 3610) decided August 11, 1896, it appeared that the entry was liquidated October 15, 1892; that October 24 the importers called the attention of the collector to an error therein against them, but filed no protest; that on the same day the collector referred the invoice to the appraiser with a request for a further examination of the merchandise and report thereon, which was furnished; that on the 11th day of November, 1892, the collector reliquidated as to a part of the merchandise but did not disturb the original liquidation; that within 10 days thereafter the importer protested; the collector declined to entertain this protest on the ground that the liquidation of October 15, as to the merchandise there in question, was not opened by the liquidation of November 11, and that therefore the filing of the protest within 10 days from November 11 was not in time. The Board of General Appraisers held, without discussing the issue raised here, that such protest was in time to raise the question of the correctness of the original liquidation.

In T. D. 24623 (G. A. 5406), decided in 1903, the entry was first liquidated November 16, was reliquidated downward on the 22d day of the same month, and a protest filed within 10 days thereafter, but no protest was filed against the first liquidation. The reliquidation did not change the rate but did reduce the amount of duty, and the question was raised whether the protest against the reliquidation challenged the correctness of the original liquidation, it being contended by the Government that it did not. The board held, however, following Robertson *v.* Downing, supra, that a voluntary reliquidation by a collector which resulted in a change of the rate or amount of duty was, for the purpose of filing a protest, to be considered as an abandonment of any previous liquidation. Numerous cases were cited.

See also T. D. 24973 (Abstract 178), decided in 1904; T. D. 35823 (G. A. 7795), decided in 1915; In re Brown Durrell Co. (121 Fed. 605, affirmed 127 Fed. 793); Dickson *v.* United States (131 Fed. 573, affirmed 139 Fed. 251); Louisville Pillow Co. *v.* United States (144 Fed. 386).

While the question here was not before the court there, it may be noted that in United States *v.* Sherman (237 U. S. 146 at 152) the Supreme Court, commenting upon the powers and duties of the collector of customs, said: "The collector, like a court during the term at which a judgment is entered, has full control of the assessment, and may on his own motion set aside his first order and make a reliquidation.—Robertson *v.* Downing (127 U. S. 613)," evidently assuming that the doctrine of that case was still the law.

During all the years covered by these cases Congress has seen fit to let the provisions of the act of June 22, 1874, and all other applicable provisions that touch the issue here, remain unchanged in

principle. There is not, so far as called to our attention, any statute prohibiting the collector, in the absence of a protest and within one year, from reliquidating in favor of the importer. A reliquidation is obviously for the purpose of correcting mistakes or errors, either of fact or of law. The United States can only ask importers to pay duties lawful in rate and correct in amount. We perceive no reason why it is not the function of the collector, if satisfied he has made a mistake in either of these respects against the Government or against the importer, to correct the same. If against the importer, he has the right of protest, and if against the Government, it is in the same position as it was relating to the first liquidation, without any right of protest or appeal whatever.

It is argued that this conclusion exposes the collector to the danger of improper influences, which may result in loss to the Government or discrimination against other importers. This may be true. But why is not the collector likewise exposed before he makes his first liquidation? We will not presume that he needs protection in the last case more than in the first or that the Government is remediless in either event.

We think, as did the Board of General Appraisers, that the law is settled in favor of the importer on this issue, and hold that the protest was timely.

As to the merits of the issue, it appears that norit is a secretly processed carbon substance used in the purification of sugar. Brown sugar treated therewith becomes pure white granulated sugar. The norit decolorizes it and removes the impurities therefrom, such impurities adhering to the norit. After having been used the norit may, by the use of the machine in question, which is essentially a furnace and dryer, be revivified, purified, and relieved of all the impurities it had taken up from the sugar and be again repeatedly cleaned and used. The board found on the evidence that this retort is machinery for use in the manufacture of sugar, and we are likewise of opinion upon the evidence it is such a machine within paragraph 391, as construed by this court in United States v. American Express Co. (6 Ct. Cust. Appls. 494; T. D. 36194).

The judgment of the Board of General Appraisers is *affirmed*.