## UNITED STATES v. HILL et al.

Circuit Court of Appeals, Second Circuit.
June 17, 1929.

No. 252.

Jules Chopak, Jr., of New York City, for appellants.

Charles H. Tuttle, U. S. Atty., of New York City (Edward Feldman, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). ■ The defendants contend that the bonds sued upon were not issued pursuant to any statutory authority, and were consequently unenforceable. Section 251 of the Revised Statutes (19 USCA § 66; 31 USCA § 427) empowers the Secretary of the Treasury to make such regulations as he shall deem best calculated to promote the public convenience and to protect the United States from fraud and loss, to prescribe forms of bonds "not inconsistent with law" to be used in the execution of the various provisions of the internal revenue laws, or in carrying out the provisions of law relating to duties on imports, or to warehousing, and to give such directions to collectors and prescribe such rules as may be necessary for the proper execution of the laws.

Pursuant to the foregoing authority the Secretary of the Treasury prescribed the form of bonds used in this case and promulgated the following regulation:

"Art. 999. *Exportation—When Not Bona Fide.*—An exportation is a severance of goods from the mass of things belonging to this country with the intention of uniting them to the mass of things belonging to some foreign country. The shipment of merchandise abroad with the intention of returning the same to the United States is not an exportation. Merchandise returned from abroad under these circumstances is dutiable according to its nature, weight, and value at the time of its original arrival in this country.

"Bonds given for the exportation of merchandise should not be cancelled by collectors unless they are satisfied that there has been an actual bona fide exportation."

It seems entirely clear from the foregoing that the bonds, read in the light of article 999 of the Regulations, do not relieve the importer of the payment of import duties, if he reexports merchandise with the intention of returning it to the United States.

The question is whether the foregoing regulation and the issue of bonds to cover import duties on merchandise which is exported with the intention of returning it to the United States are warranted by law.

Section 2971 of the Revised Statutes provides that: "All merchandise which may be deposited in public store or bonded warehouse may be withdrawn by the owner for exportation to foreign countries * * * at any time before the expiration of three years from the date of original importation. * * *"

Section 2977 provides that merchandise upon which duties have been paid may remain in custody of the officers of the customs, "and if exported directly from such custody to a foreign country within three years, shall be entitled to return duties."

Section 2979 provides that, if the importer of merchandise on which the duties have not been paid "shall give to the collector satisfactory security that the merchandise shall be landed out of the jurisdiction of the United States, in the manner required by the laws relating to exportations for the benefit of drawback," the collector shall permit the merchandise to be shipped without the payment of any duties thereon.

The question we have to decide is the meaning of "exportation." There are no decisions of the Supreme Court or the Circuit Courts of Appeals which specifically determine this, but in Flagler v. Kidd (C. C. A.) 78 F. 341, a situation somewhat like the present arose. There distilled spirits were withdrawn from bond under Revised Statutes, § 3330 (26 USCA § 375). That section authorizes withdrawal of spirits for export without payment of the internal revenue tax and forbids relanding of the goods. The spirits were shipped from Des Moines, Iowa, to Windsor, Canada, with the intention of forwarding them to New York after they had been placed in a warehouse at Windsor for a short time. In these circumstances it was held that section 2500 of the Revised Statutes, which provides that goods of native production, which have been "once exported" without paying internal revenue taxes, shall pay those taxes upon reimportation, did not apply, because the goods had been intentionally relanded, and the spirits were confiscated under section 3330. We can hardly suppose that section 2500 would not have been thought to apply if the landing of the spirits at Windsor had been made with no purpose later to forward to New York.

In Swan & Finch Co. v. United States, 190 U. S. 143, 23 S. Ct. 702, 47 L. Ed. 984,

a statute allowing a drawback "on the exportation" of imported goods used in manufacture in this country was under consideration. The court said that, when imported seed was used in this country to manufacture lubricating oils, the consumption of the oils by steamers did not involve an exportation within the meaning of the statute. In the course of his opinion Justice Brewer said: "As the legal notion of emigrating is a going abroad with an intention of not returning, so that of exportation is a severance of goods from the mass of things belonging to this country with an intention of uniting them to the mass of things belonging to some foreign country or other."

The opinion of the Attorney General on July 2, 1883, as to a proposed withdrawal of whisky from a bonded warehouse, with the intention of shipping it to Bermuda and thereafter relanding it in this country, was to the effect that the landing in Bermuda was not an exportation within the purview of section 3330 of the Revised Statutes. An opinion of the Board of General Appraisers on December 23, 1910, as to an importation of mica, which was placed in a bonded warehouse in this country, transported to London, and immediately thereafter sent back to this country, was likewise to the effect that there was no exportation. The rulings of the department have long been in accord.

We can feel little doubt that a somewhat ambiguous word like "exportation," which has so long been treated in the departmental rulings as meaning only "a severance of goods from the mass of things belonging to this country, with an intention of uniting them to the mass of things belonging to some foreign country," should be regarded by us as having the same meaning. National Lead Co. v. United States, 252 U. S. 140, 40 S. Ct. 237, 64 L. Ed. 496; Robertson v. Downing, 127 U. S. 607, 8 S. Ct. 1328, 32 L. Ed. 269.

The record contains no bill of exceptions, so that we are confined to a consideration of the judgment roll. It is contended that the complaint states no cause of action, because of the allegation that the goods were not actually and bona fide exported beyond the limits of the United States. But even if it might be said that such language involved a conclusion, and not ultimate facts, no such error has been assigned, and the question cannot be raised after verdict and judgment. Baker v. Warner, 231 U. S. at page 592, 34 S. Ct. 175, 58 L. Ed. 384; Palmer v. Arthur, 131 U. S. at page 64, 9 S. Ct. 649, 33 L. Ed. 87; Lincoln v. Iron Co., 103 U. S. at page 415, 26 L. Ed. 518; Wills v. Claflin, 92 U. S. at page 141, 23 L. Ed. 490.

It has been suggested that the verdict should not have been directed upon the pleadings and the opening address of defendants' attorney, but only after receiving the proofs. But if the complaint stated a good cause of action, as we hold to have been the case, we must assume that the defendants' opening contained statements which justified the direction. The only way to raise any question regarding the proofs, whether made by means of admissions or otherwise, was by a bill of exceptions. Because of the absence of such a bill we can only consider errors apparent upon the judgment roll. Nalle v. Oyster, 230 U. S. at page 176, 33 S. Ct. 1043, 57 L. Ed. 1439; Board of Com'rs of City and County of Denver v. Home Savings Bank, 236 U. S. 101, 35 S. Ct. 265, 59 L. Ed. 485; Revised Statutes, § 700 (28 USCA § 875). No such errors appear.

Judgment affirmed.