OVERTON, Justice.
 

 The present suit is one instituted by the state against Wilson & Co., Inc., of Louisiana, to recover a tax of
 
 1%
 
 per cent, of the gross receipts arising from wholesaling, selling, or jobbing meat products in the state.
 

 The defendant admits having made the gross sales set forth in the petition, but resists payment on the ground that the tax is unconstitutional, because, tersely stated, (1) it is a burden on interstate commerce; (2) because it denies defendant the equal protection of the laws; (3) because it deprives defendant of its property without due process of law; (4) because it is not graduated, the tax being a license tax; and (5) because it takes defendant’s property without just compensation.
 

 There was judgment below for plaintiff in accordance with the prayer of its petition. Defendant has brought the case here by this appeal.
 

 The tax sued for is one levied by section 1 of Act No. 17 of 1932, which, so far as pertinent, reads as follows:
 

 “Every person, firm, corporation, partnership or • association of persons engaged as manufacturers, wholesalers, jobbers, or engaged in both wholesale and retail business of selling, handling, or exchanging butter, oleo, oleomargarine, * * * beef and veal meats or other beef or veal by-products of the slaughter-house or packing house business or industry arising from the handling of beef and veal meats, shall pay a tax in addition to any tax already imposed thereon for the privilege of engaging in such business of one and one quarter percentum (1 %%) of the gross receipts from the sale of the commodities enumerated based on the wholesale prices referred to herein.”
 

 Although the tax sued for is levied under section 1 of the act, still, due to the manner in which the case is presented, it is advisable, if not necessary, to quote section 2 of the act. Section 2 reads as follows:
 

 “All persons, firms, corporations, partnerships or associations of persons slaughtering or having cattle or calves slaughtered on their
 
 *653
 
 own account or for custom rates in the State of Louisiana shall pay a tax, in lieu of any other tax levied in this Act, for .the privilege of engaging in such business, on each head of cattle or calves so slaughtered, according to the following rates, viz; on animals weighing 261 pounds or over dressed weight, fifteen cents (150) for each animal slaughtered; on animals weighing less than 261 pounds dressed weight, ten cents (100) for eachlanimal slaughtered; and the commodities referred to in this”’section shall not be subject to any further tax under the provisions of this Act.”
 

 Section 3 of the act exempts from the taxes levied by the act all milk and milk products produced on the farm and delivered direct to the consumer, and all beef, veal, and meats from animals slaughtered on the farm and sold direct to the consumer, except where such products are bought or slaughtered for the purpose of resale, and raw fluid milk-, pasteurized milk, buttermilk, cream, or cottage cheese, whether sold direct from the farm or through jobbers, wholesalers, retailers, or any other distributors.
 

 The purpose of levying the tax, as disclosed by section 9 of the act, is to eradicate the cattle fever tick.
 

 Defendant describes itself in its answer, which is not disputed in this respect, as a corporation with its principal place of business in the city of New Orleans. It is engaged in the business of dealing in, wholesaling, and jobbing dairy and meat products, though not milk, and besides butter, and butter substitutes, in this state. It buys its merchandise from without the state, and, upon its arrival in New Orleans, stores it there, and sells it, in the state, to various customers at wholesale. In disposing of its goods, defendant is now and has been including the tax, and carries it in a separate account with the intention of returning it to its customers in the event the tax is defeated in this suit.
 

 As defendant has collected the tax from its customers, though has not paid it to the state authorities, plaintiff urges that defendant no longer has an interest in resisting the payment of the tax. In our view, this position is not well grounded. Notwithstanding this precaution on defendant’s part, defendant is still the debtor for the tax. The tax is laid on the manufacturer, wholesaler, or jobber, and remains on him. It does not pass to the purchaser of the merchandise, although incorporated in the bill to him, whether it appear on the bill separately or not. The purchaser does not pay the tax, although he may pay the vendor more for the goods, because of the vendor’s obligation to pay it, but that is all. Lash’s Products Co. v. United States, 278 U. S. 175, 49 S. Ct. 100, 73 L. Ed. 251; Shearer v. Commissioner of Internal Revenue (C. C. A.) 48 F.(2d) 552.
 

 The complaint that the tax levied in section 1 of the act, and sought to be collected here, is a burden on interstate commerce, rests on what we consider a misconstruction of an dnartistically drawn statute. To quote from defendant’s brief, its position is that:
 

 “The tick law [referring to the act levying the tax] is so drafted as to place a tax upon wholesalers and jobbers of beef and veal meats, oleo, hides and other by-products, when slaughtered without the state, and places no tax upon wholesalers and jobbers of like prod
 
 *655
 
 ucts when slaughtered within the state. The tax placed upon the slaughterer within the state [say counsel] is materially lower than the tax on wholesalers and jobbers selling meats from animals slaughtered without the state.”
 

 If counsel were correct in their construction of the act, the case might end here, but it seems clear to us that counsel are incorrect. The act levies two distinct taxes, one of 1% mills on the gross receipts, and the other of 10 cents or 15 cents on an animal, for the privilege of engaging in two distinct businesses, one of which is the business of manufacturing, wholesaling, and retailing beef, veal, milk, cheese, and other by-products of these animals, and the other is a tax of 10 cents or 15 cents an animal slaughtered, depending upon whether its weight is under 261 pounds, or is 261 pounds or more, when dressed. The act makes no reference to the sources of the products sold; that is, as to whether they come from another state or not. It is immaterial from what state, so far as concerns the tax levied by section 1 of the act, the products come; that is, whether they are Louisiana products, or the products of another state shipped here, at the instance of the purchaser, for resale. Whether they are Louisiana products or the products of another state shipped here, the tax for conducting the business of selling them, in this state, is the same; namely, 1
 
 %
 
 per cent, of their gross receipts.
 

 Section 1 of the act, in which classification defendant falls, contains no exemption from the tax whatever. The only exemptions are contained in section 3 of the act, exempting beef, veal, and meats of animals slaughtered on the farm and sold direct to the consumer and not for resale, and exemptions of various forms of milk and cream or cottage cheese, the latter, whether sold direct from the farm or through jobbers, wholesalers, or retailers, or other distributors. There is no danger of these exemptions operating to relieve residents of this state of paying the taxes levied by the act to the prejudice of residents of other states. These exempted articles constitute a classification for purposes of exemption, which is reasonable and just, and which does not make the tax operate as a burden on interstate commerce.
 

 The tax levied by section 2 of the act is wholly independent of the one levied by section 1 and is confined to the slaughtering of animals by persons for their own account or for custom rates. The clause in this section to the effect that the commodities therein enumerated shall not be subject to any further tax, under the provisions of this act, would not justify a person, in selling such commodities, to transgress the classification of the section and seek to do business under the classification of section Í, and escape the tax imposed by the latter section, and thereby discriminate, under the guise of law, against interstate commerce. The tax is not a burden on such commerce.
 

 In discussing the question of the burden on interstate commerce, counsel also argue that the statute imposes a tax on such commerce to enforce a state police regulation. In disposing of this position, we deem it sufficient to say, as will hereafter appear, that we do not consider the tax as one levied under the police power, and governed by the rule, pertaining to the power to levy such taxes but
 
 *657
 
 as a tax levied under section 8 of article 10 of the Constitution relative to taxation for revenue purposes. Taxes levied under that power may be devoted to the enforcement of a police regulation, as is frequently done.
 

 The contention that the act denies defendant the equal protection of the law in violation of section 1 of the Fourteenth Amendment of the Constitution of the "United States rests upon the hypothesis that defendant, who imports its meats from other states and sells them for resale in this state, is more heavily taxed than is a person who buys animals slaughtered in the state. This position arises from an erroneous construction of the act. The erroneous construction was considered by us in passing, in the preceding part of this opinion, on the question as to whether the act operated as a burden on interstate commerce. As a matter of fact, the two taxes are distinct, based upon reasonable classifications, and, the moment a person leaves the classification, enacted in section 2 of the act, and conducts his business under the classification enacted in section 1 of the act, he becomes liable for the tax imposed in that section. It matters not,.so far as concerns section 1 of the act, which is the section within which the business of defendant falls, where the animals are slaughtered, whether in or outside the state, for the tax is the same.
 

 The position that the act deprives defendant of its property without due process of law rests upon the ground that it takes the property of wholesalers and jobbers and confers it upon the owners of horses, asses, and cattle, and benefits no other persons except the owners of these animals, who pay none of the tax; they not being in the businesses taxed by the act. The contention is also made that this is taxation for a private purpose.
 

 The purpose of levying the tax, as appears from section 9 of the act, is to eradicate the cattle fever tick from the state, and its proceeds are to he devoted exclusively to than; purpose. Such a purpose is unmistakably a public purpose. It is such a purpose as redounds to the public welfare. It not only promotes the growth of an important industry, but tends to supply the people with healthy meats and milk for food. Neal v. Boog-Scott (Tex. Civ. App.) 247 S. W. 689. The fact that a particular class may receive a special benefit from the tax does not affect the public character of the tax. Neal v. Cain (Tex. Civ. App.) 247 S. W. 694; Schulte v. Fitch, 162 Minn. 184, 202 N. W. 719; Utah Power & Light Co. v. Pfost, 286 U. S. 165, 52 S. Ct. 548, 76 L. Ed. 1038.
 

 It is argued, under this heading, that is, under the heading of depriving one of his property without due process of law, that the tax is unconstitutional, because a' large part of it will fall on articles produced outside the state. Properly speaking, the tax Will fall on the privilege of selling such articles in the state, after they have become a part of the general mass of property in the state, as well as upon the privilege of selling such articles produced in the state. This certainly does not make the tax unconstitutional. There is nothing more common than the taxing of property, brought from another state, to become a part of the mass of property in this state, nor than the taxing of the right to dispose of such property in business in this state. There
 
 *659
 
 is nothing here showing that defendant is being deprived of its property without due process of law.
 

 The position that the tax is unconstitutional, because it, being a license tax, is not graduated, rests upon the theory that the failure to graduate the tax results from making the graduation on a percentage basis of sales and from exempting wholesalers and jobbers selling beef and veal slaughtered within the state.
 

 The tax affecting appellant is
 
 1%
 
 per cent, of the gross sales. Such a graduation has been held, and properly so, to be a proper method, under section 8, article 10, of the Constitution of 1921, of graduating license taxes. State v. Heymann, 178 La. 479, 151 So. 901.
 

 We are unable to see with clearness how exempting the sale of certain property from taxation may affect the validity of the graduation of a license tax. Be that as it may, the statute does not exempt the wholesaling and jobbing of beef and veal slaughtered within the state from taxation, but, to the contrary, it subjects their sale, when made for resale, as appears from section 3 of the act, to taxation. No reason is presented here to hold that the tax is null, because not graduated.
 

 The position that defendant’s property is being taken without just compensation by the exaction of the tax, in violation of section 2 of article 1 of the Constitution of 1921, rests upon the theory that the act levying it is a police regulation, enacted in the exercise of the police power of the state, and levies a tax far in excess of what is necessary to comply with Act No. 6 of 1930, the Cattle Dipping Law, and is therefore null, citing State v. Schofield, 136 La. 702, 67 So. 557.
 

 Section 8 of article 10 of the Constitution of 1921 authorizes the Legislature to levy license taxes on such classes of persons, associations of persons, and corporations, pursuing any trade, business, occupation, vocation, or profession, as the Legislature may deem proper. All things considered, we think that the Legislature levied the tax under the authority of this article. The fact that the act, which levies the tax, devotes it exclusively to the eradication of ticks, does not make the tax one levied under the police power, under which, it may be said, among other requirements, that the tax should never exceed materially the regulatory purpose for which it is levied. The devoting of the tax exclusively to the eradication of the fever tick may be regarded as being in the nature of an appropriation of a tax levied under the powers of taxation, conferred by the Constitution, to defray the estimated expense of the Cattle Dipping Law, in whole or in part. There is no taking of property without just compensation here. The validity of the tax does not depend upon benefits to be received by the tax debtor.
 

 The judgment is affirmed.
 

 ST. PAUL, J., absent.