## TEXAS CO. v. WILKINSON et al.

## MAGNOLIA PETROLEUM CO. v. SAME.
### Nos. 361, 362.

District Court, E. D. Louisiana.
Dec. 23, 1937.

772

Chas. H. Blish, of Shreveport, La., F. T. Baldwin, of Houston, Tex., Milling, Godchaux, Saal & Milling, of New Orleans, La., and Yandell Boatner, Fred Simon, and Pugh, Grimmet & Boatner, all of Shreveport, La., for plaintiffs.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., F. A. Blanche, of Baton Rouge, La., and Hugh M. Wilkinson, Sp. Counsel, Lawrence A. Molony, and E. R. Schowalter, all of New Orleans, La., for defendants.

BORAH, District Judge.

The above styled suits are of similar nature and have been consolidated for the purpose of trial; accordingly they may be disposed of in one opinion.

These actions are brought by plaintiffs to enjoin the defendants from assessing or instituting legal proceedings to collect the back gasoline taxes, penalties, and attorneys' fees which defendants have asserted are due on account of the 3 per cent. gallonage deduction heretofore made by these plaintiffs in their reports to the supervisor of public accounts, now collector of revenue, under the provisions of Act No. 6 of the Extra Session of the Legislature

of Louisiana for the year 1928, as amended, and under the provisions of the constitutional amendment of 1930, Act No. 1 of the Extra Session of 1930; and to enjoin the defendants from changing the administrative interpretation heretofore given to the statute, as amended, and the constitutional amendment so as to require the payment in the future of taxes based upon the 3 per cent. of the gallonage heretofore deducted. Plaintiffs also pray for a declaratory judgment declaring as against the defendants that plaintiffs were entitled to deduct and are hereinafter entitled to deduct the 3 per cent. allowance as they have done since January 4, 1929, and November 27, 1930, the effective dates of the enactments here in controversy.

Upon the filing of these suits and on motion of counsel for the respective plaintiffs, a rule issued directing the defendants to show cause on a day certain why an interlocutory injunction should not issue in each case as prayed for. After a full hearing at which evidence was introduced in the form of affidavits, and argument had by counsel, the court issued the interlocutory injunctions for the reasons, among others, that the questions presented by the applications were grave and injury to the moving parties would be certain and irreparable if the applications were denied and final decrees were had in their favor; and because Act No. 16 of the Second Extra Session of the Legislature of Louisiana for the year 1934, and its amendment, Act No. 23 of the Second Extra Session of the Legislature of Louisiana for the year 1935, does not provide an adequate remedy at law for the recovery of the tax, if paid under protest. The matter is now before the court on final hearing.

The material facts are not disputed. Plaintiffs, the Texas Company and the Magnolia Petroleum Company, are corporations organized and chartered under the laws of the state of Delaware and the state of Texas, respectively, and are duly authorized to do business in the state of Louisiana as a "dealer" within the meaning of Act No. 6 of the Extra Session of the Legislature of Louisiana for the year 1928, as amended, and Act No. 1 of the Extra Session of the Legislature of Louisiana for the year 1930, which latter act was adopted November 4, 1930, as a constitutional amendment, being article 6A,

sections 1 through 14, of the Constitution of the state of Louisiana of 1921.

The defendants and each of them are residents of Louisiana and the Eastern District thereof, having their official residence in the Eastern District of Louisiana.

Plaintiffs have for a number of years been engaged in Louisiana in the business of importing, marketing, and selling gasoline and other motor fuel, and since the effective dates thereof have been subject to the provisions of Act No. 6 of the Extra Session of the Legislature of Louisiana for the year 1928, as amended, and of Act No. 1 of the Extra Session of the Legislature of Louisiana for the year 1930 (article 6-A of the Constitution of this state).

Plaintiffs, commencing with the month of January, 1929, up to the time of the promulgation of new forms by the collector of revenue about May, 1937, have made monthly reports of gasoline imported by it into the state of Louisiana for gasoline tax purposes under the provisions of said Act No. 6 as amended, and said Act No. 1, and said constitutional amendment; that the monthly reports were made on forms prepared and furnished to it by the supervisor of public accounts, now collector of revenue of the state of Louisiana, and plaintiffs have paid such taxes, as shown by said reports, in the amounts shown by said reports, less such deductions as may be shown on said reports; that the term gasoline as herein used includes gasoline, benzine, naphtha and other motor fuel.

Act No. 6 of the Extra Session of 1928, § 4, provided that the dealer should make monthly reports on blanks furnished by the supervisor of public accounts; that, in accordance with previous gasoline tax statutes of Louisiana, the supervisor had prepared forms for use in making returns and remitting taxes under said prior statutes, which forms had contained no provision for any 3 per cent. allowance because said allowance provision had not been referred to in said prior statutes. Act No. 6 of the Extra Session of 1928 authorized a 3 per cent. allowance as defined in said statute, and subsequent to its enactment there was a discussion between E. A. Conway, then supervisor of public accounts, and attorneys for certain major oil companies, notably Mr. Henry C. Walker, Jr., representing the Louisiana Oil Refinery

Company. That in the Walker correspondence which has been admitted in evidence, Mr. Conway announced that, for the purpose of the 3 per cent. allowance by deduction from gallonage received, his department intended to treat sales as the equivalent of receipts and that it was, therefore, desired by his department that the deduction of 3 per cent. be made by the dealers from gallonage represented by monthly sales, use, and consumption. That from the time of the exchange of this correspondence down to the time of the letter of demand from Hugh M. Wilkinson, special counsel, dated March 26, 1937, it was the unbroken practice of the dealers in the state of Louisiana, with the exception of the Shell Petroleum Corporation, to report and remit in the manner indicated by Mr. Conway, including the taking of the 3 per cent. allowance on the basis of deduction from actual sales, use, and consumption; that it was the consistent practice of Mr. Conway's department, and later Miss Grosjean's department, to accept reports and remittances on that basis, to furnish blanks on which a 3 per cent. deduction on such basis was indicated in the printed form, to receipt for tax remittances on that basis, to recheck and approve the reports on that basis, and in all matters to act consistently with the original opinion expressed by Mr. Conway in the correspondence to Mr. Walker.

From the 4th day of January, 1929, until March 26, 1937, the supervisor of public accounts, now collector of revenue, accepted remittances by plaintiffs of said gasoline tax, calculated after a deduction of 3 per cent. of the total gallonage received. That said supervisor of public accounts, later the collector of revenue, during said period, never required any accounting by said plaintiffs of any "losses in handling such motor vehicle fuel" (gasoline, etc.).

It was the practice of the supervisor of public accounts, later collector of revenue, periodically to send auditors to inspect the duplicate originals of the monthly returns kept by plaintiffs, together with the work sheets attached to such duplicate original returns, and any books or records considered necessary by the auditors to check the returns, and the auditors, upon completion of their inspection, would mark said duplicate original returns "Approved" or "OK" and sign their names on the duplicate originals. The auditors would then send a report to the supervisor, detailing the results of their examination of the records of plaintiffs, showing the amount of the tax as calculated by them from the plaintiff's records; that another employee in the office of said supervisor of public accounts would then compare said reports of the auditors with the original returns of plaintiffs, and, if the figures coincided, would write to the supervisor of public accounts stating that such returns were correct.

The authority for imposing gasoline taxes in Louisiana is found in section 22 of article 6 of the Constitution of 1921 which authorized the collection of a tax of two cents per gallon on gasoline sold in the state. At the regular session of the Legislature for the year 1928, there was adopted for submission to the people at the general election to be held in November of that year, two amendments to this article of the Constitution. Act No. 204 of 1928 proposed an amendment to said article by adding thereto section 25, which reads as follows: "The provisions hereinabove, relating to the tax on gasoline, shall apply to all gasoline sold, used or consumed in the State of Louisiana; said tax to be collected as is now, or may hereafter be, prescribed by law."

Act No. 219 of 1928 proposed that section 22 of said article be amended to read as follows: "On gasoline, benzine, naphtha and other motor fuels, as defined by law, when sold, used or consumed in the State of Louisiana, there shall be levied a tax not to exceed four cents (4¢) per gallon, to be collected as prescribed by law."

These constitutional amendments were adopted by the people at the general election, whereupon the Legislature was called into extraordinary session and there was enacted Act No. 6 of 1928, which increased the gasoline tax to four cents per gallon on all gasoline, or motor fuel, sold, used, or consumed in the state for domestic consumption. In this statute there was for the first time in the history of gasoline tax legislation in Louisiana incorporated therein a provision in favor of the "dealer" which in express terms declared "that an allowance of three per cent of the total gallonage received during every calendar month shall be made and deducted by the dealer to cover his or their losses in handling such motor vehicle fuel." It is the meaning of this handling loss allowance provision which constitutes the crucial point in this case. Reserving for future

discussing its meaning, reference will now be made to the pertinent provisions of the act and the subsequent amendments thereto.

Section 1 reads in part as follows:

"Section 1. Be it enacted by the Legislature of Louisiana, That there is hereby levied a tax of four cents (4¢) per gallon on all gasoline, or motor fuel, sold, used or consumed in the State of Louisiana for domestic consumption, to be collected as hereinafter set forth. * * *

"Provided that an allowance of three per cent of the total gallonage received during every calendar month shall be made and deducted by the dealer to cover his or their losses in handling such motor vehicle fuel, and that a refund shall be made to said dealer for the tax paid on all motor vehicle fuel which after such payment shall be lost or destroyed by fire, lightning, flood, tornado, windstorm, explosion or other accidental or providential cause."

Section 2 provides that the tax shall be collectible from all persons engaged as dealers in the state of Louisiana, and the term dealer is defined in the act.

Section 3 requires dealers to file reports with the supervisor of public accounts within 10 days after the close of the month, showing importations or receipts of gasoline into the state.

Section 4 provides that monthly reports shall be made by dealers to the supervisor of public accounts showing the gasoline sold or used by them during the preceding month, and that the dealer shall remit to the supervisor the tax of four cents per gallon on the gallonage thus reported.

Section 5 provides that the supervisor shall within 5 days, after receipt of said taxes from the taxpayer, forward the amount collected to the state treasurer.

Section 6 states that it is the purpose of the act to centralize the collection of the tax in the hands of those who originally dispose of the gasoline.

Section 7 has reference to the powers and duties of the supervisor of public accounts with respect to examining books and records and correcting returns.

Section 8 provides for a delinquency penalty on the dealer and refers to such dealer as the tax debtor.

Section 9 provides that the supervisor of public accounts may examine the books and records of a person not making a return and impose the cost thereof on said person.

Section 10 declares the making of a false report to be perjury and vests in the supervisor the duty to collect, supervise, and enforce the collection of all taxes due under this act.

Section 11 provides for the assessment of costs against delinquent taxpayers and provides that the only legal evidence showing the payment of the tax herein levied shall be by appropriate form of receipt issued by the supervisor of public accounts.

Sections 12, 13, and 15 have no bearing on the issues which this case presents.

Section 14 provides that the tax shall not apply to sales to the United States government.

Act No. 6 of 1928 was amended by Act No. 8 of the Legislature of Louisiana for the year 1930. This act amended and re-enacted sections 4, 6, 8, and 12 of the original act but did not amend section 1 which levies the tax and authorizes the allowance of 3 per cent.

Under section 4 of the original act the payment of the tax was to be made along with the monthly reports and this section was amended (Act No. 8 of 1930) to provide that a dealer "shall immediately upon the producing, refining, manufacturing, blending or compounding of any gasoline or motor fuel pay to the Supervisor of Public Accounts the tax levied herein, which is hereby made due and payable immediately upon said producing, refining, manufacturing, blending or compounding; provided further that any dealer bringing gasoline or motor fuel into the State of Louisiana for sale, use or consumption therein shall immediately pay to the said Supervisor of Public Accounts the tax levied herein which is hereby made due and payable immediately upon same coming within the boundaries of this State." In the original act the dealer was required to file monthly statements within 20 days following each calendar month, which statements were to be under oath on forms prescribed and furnished by the supervisor of public accounts, and which statements were to show the gasoline sold within the state or used or consumed by the dealer. The amendment added this provision, "Provided further that any dealer preferring to pay any tax due hereunder at the time that the monthly reports provided for in this section are filed will be permitted

to do so provided that the said dealer shall have previously furnished the Supervisor of Public Accounts a bond guaranteeing the payment of any tax, penalties or costs accrued or accruing under this Act." The amendment further provides that, if the dealer fails to pay the tax or furnish the bond 'required, the dealer may be called upon to show cause why he should not be ordered to cease from further pursuit of business as a dealer. A dealer who has failed to pay any tax accruing under the act or to furnish bond as provided in this section, "shall ipso facto, without demand or putting in default, cause said tax, penalties and costs to become immediately delinquent," and the supervisor of public accounts is authorized to summarily proceed against the dealer to show cause why said dealer should not be ordered to cease from further pursuit of business until such time as he has paid the delinquent tax or until he has furnished bond as provided.

Section 6, as amended, provided that "It is the purpose of this Act to centralize the collection of the tax herein authorized in the hands of those who originally dispose of gasoline or motor fuel for distribution and consumption within this State. It is further the purpose of this Act to require the payment of the tax on any gasoline or motor fuel to be sold, used or consumed in this State immediately upon the producing, refining, manufacturing, blending, compounding or importing of such gasoline or motor fuel unless a bond, as provided herein, is furnished to guarantee the payment of said tax. In no case shall there be a duplication of the collection' of the tax herein levied. For the purpose of the enforcement of this Act and the collection of the tax levied hereunder, it is presumed that all gasoline or motor fuel produced, refined, manufactured, blended, or compounded in this State, imported into this State or held in this State, by any dealer, is to be sold, used or consumed within this State and is subject to the tax herein levied; provided that such presumption shall be prima facie only and subject to proof furnished the Supervisor of Public Accounts."

This section further provides that it was not the intent of this article to levy a tax on gasoline for export, and that as to such gasoline as might be exported the dealer could claim a refund for the tax it had theretofore paid, but it was the intent of the act in order to "guarantee the

collection of the tax herein levied" to require dealers "to immediately pay the tax levied herein on gasoline or motor fuel unless said dealer" shall have furnished the bond required under the act.

The amendment to section 8 changed and increased the penalties to the extent of which we are not here concerned.

The amendment to section 12 provided funds for the enforcement of the act.

These provisions of Act No. 8 of 1930 have been outlined in some detail because they were all copied into the constitutional amendment of 1930 (Act No. 1 of the Extra Session of 1930), including the whole of section 1 and the proviso for the allowance of 3 per cent. The constitutional amendment, Act No. 1 of the Extra Session of 1930, levying an additional tax of one cent per gallon on all gasoline when sold, used, or consumed in the state of Louisiana for domestic consumption, was adopted by the electors at the general election held in November, 1930, and it has not since been amended.

At the regular session of 1932 the Legislature adopted Act No. 16 of 1932 to amend and re-enact section 1 of Act No. 6 of 1928 as amended by Act No. 8 of 1930. Seven new sections were added relating to the enforcement provisions of the statute and providing the penalty which shall be imposed against any person who violates the provisions of the act. The amendment to section 1 simply changed the definition of motor fuel by striking out the word "vehicle" from the expression "motor vehicle fuel" which was twice used in the proviso concerning the allowance of 3 per cent.

Again in 1934 the Legislature of Louisiana adopted Act No. 34 of 1934 to amend and re-enact the title and sections 1, 2, 4, 6, and 7-E, of Act No. 6 of the Extra Session of 1928, as amended. This amendment left undisturbed in section 1 the proviso with respect to the 3 per cent. allowance and amended sections 4 and 6 with respect to a bond and the payment of the tax at the time of importation by making it compulsory for every dealer to furnish bond. Section 2 further defined the term dealer. Section 7-E strengthened the enforcement provision of the act by fixing the hours for delivery to distributor or retailer.

Sections 3 and 6 of Act No. 6 of the Extra Session of 1928 were again amend-

ed and re-enacted by Act No. 335 of 1936. Section 3 was amended so as to require dealers to retain their records for 3 years, and section 6 was amended by adding the following provision, "For the purpose of the enforcement of this Act and for the collection of the tax levied hereunder it is presumed that all gasoline or motor fuel produced, refined, manufactured, blended, or compounded in this State, imported into this State or held in this State, by any dealer, is to be sold, used or consumed within this State and is subject to the tax herein levied; provided, that such presumption shall be prima facie only and subject to proof furnished the Supervisor of Public Accounts."

■ From the foregoing analysis of the amendments it is apparent that this subsequent legislation has not in any manner affected the meaning of the handling loss allowance clause as it was originally enacted in section 1 of Act No. 6 of the Extra Session of 1928, consequently its meaning must be determined from the prior statute.

Reading said Act No. 6 as a whole in an endeavor to give effect to and to harmonize all of its provisions, it will be found that in section 1 there is "levied a tax of four cents (4¢) per gallon on all gasoline, or motor fuel, sold, used or consumed in the State of Louisiana for domestic consumption, to be collected as hereinafter set forth." Turning to section 4 it will be found that the tax levied in the first clause of section 1 is to be collected from dealers, as defined by the act in section 2, who are required within 20 days after the expiration of each monthly period to file with the collector of revenue a statement showing the gasoline sold, used, or consumed during the period covered by the report, and to remit the tax to the supervisor of public accounts at the rate of four cents per gallon. By thus reading the first paragraph of section 1, together with the provisions of sections 2 and 4, it cannot be gainsaid but that all of the gasoline sold, used, or consumed was to be used to measure the tax. However, there is a proviso in section 1 which operates as a limitation upon both the levy and the collection of the tax. This proviso without qualification declares,

"Provided that an allowance of three per cent of the total gallonage received during every calendar month shall be made

and deducted by the dealer to cover his or their losses in handling such motor vehicle fuel, and that a refund shall be made to said dealer for the tax paid on all motor vehicle fuel which after such payment shall be lost or destroyed by fire, lightning, flood, tornado, windstorm, explosion or other accidental or providential cause.

"Provided further that the said refund shall be paid by the Supervisor of Public Accounts upon proper showing and authentic proof of destruction and shall be paid from the funds in the hands of the Supervisor of Public Accounts, which have been collected under this Act, and which have not been paid by the said Supervisor of Public Accounts to the State Treasurer."

Pretermitting for the moment the meaning of the word "received" it would appear from the language, "Provided that an allowance of three per cent of the total gallonage received during every calendar month shall be made and deducted by the dealer," that the Legislature meant that there was to be set aside from the total gallonage or deducted from the total gallonage the whole of that 3 per cent. In State v. Johnson, 173 La. 669, 670, 138 So. 503, 506, the Supreme Court, in construing this statute, said, "This is an excise, not a property, tax. The tax is laid, not upon the gasoline, but upon the right or privilege of selling, using or consuming it; the amount to be paid being based upon the quantity involved."

This court has likewise so construed the statute, and the Supreme Court of the United States as well. Trinity-farm Construction Co. v. Grosjean, D.C., 3 F.Supp. 785; Id., 291 U.S. 466, 54 S.Ct. 469, 78 L.Ed. 918. Having this construction in mind it follows that the lawmakers, in providing for a deduction from the gallonage, did not exempt anything from the tax but merely deducted the 3 per cent. from the gallonage which was to be used for the purpose of measuring the tax. But how was this allowance or deduction to be made effective? The answer is to be found in the statute. There is only one time and place provided in the statute for making this allowance of 3 per cent., and that is in the monthly report, which the dealer was required to file with the supervisor of public accounts, showing the total gallonage sold, used, or consumed. If this was not the intendment of the Legislature then this provision of the statute is with-

778

out meaning since no provision is made for its deduction elsewhere.

Reverting to the meaning of the word "received" as used in this proviso, it will be found in section 3 that the Legislature provided that all persons importing such gasoline shall, within 10 days after the close of each calendar month, report to the supervisor of public accounts the gallonage of each of the classes of such gasoline or motor fuels received, but it did not require any reports from a manufacturer. No tax was due by reason of any information furnished in the report, and the information contained therein for any given month had no necessary relation to anything which would be contained in the reports, which were required to be filed 10 days later, disclosing the volume of sales. Feeling confident that the Legislature never intended that the statute would be discriminatory to the extent that an importer could deduct 3 per cent. from his receipts and that a manufacturer could not, I have concluded that when the Legislature used the word "received" it intended to cover both the gasoline imported and manufactured; therefore, when the Legislature referred to gasoline received or manufactured it was referring to gasoline received and manufactured for sale, use, or consumption, for no other gasoline was to be used to measure the tax. That this is the correct construction of the statute will affirmatively appear from the case of State v. Texas Company, 187 La. 287, 174 So. 359. There the court was called upon to construe Act No. 142 of 1924, as well as Act No. 6 of 1928, as amended, and the constitutional amendment of 1930. The state in that proceeding was seeking to require the defendant to pay a tax on gasoline produced from casing-head gas which it under a contract theretofore entered into had agreed to deliver to the owner. The court held that the gasoline was manufactured by defendant not for sale but for delivery to the owner, and consequently that the portion of the gasoline thus to be delivered was not to be included for the purpose of measuring the amount of the tax. There are other provisions of the statute which likewise reflect the meaning of the word "received." The statute in question imposes no tax on the privilege of selling gasoline to the United States, nor is any tax imposed where gasoline imported into or manufactured in the state is thereafter exported.

Consequently the word "received" contained in the proviso must mean received for sale, use, and consumption; otherwise the 3 per cent. allowance would operate in respect to transactions which were not subject to any tax at all. When this meaning is given to the word receipts, sales and receipts are equivalent terms just as the supervisor of public accounts ruled on March 5, 1929. Thus construing the statute, the 3 per cent. allowance must be considered as nothing other than a flat statutory allowance. Such has been the uniform construction and interpretation of the statute and the constitutional amendment by the administrative officials of the state who were not only charged with the administration of these enactments but who were required to interpret and construe them. This is the construction that the plaintiffs seek, this was apparently the construction given to the statutes involved in State v. Strother, 179 La. 354, 154 So. 22, and this is the construction that gives effect to all of the terms and provisions of the statutes.

But, say the defendants, the tax is not a tax upon the privilege of selling or using the gasoline, but upon the gasoline itself; and it is levied not on the dealer but upon the ultimate consumer, and the plaintiffs are tax collectors and not taxpayers. Reference has heretofore been made to some of the decisions construing these enactments, and I take it that these decisions, apart from the clear language of the statute, settle the proposition that the tax in controversy is imposed upon the dealers and not the ultimate consumer, and that it is in fact paid by the dealers. Under section 2 of the statutes it is provided that the tax "shall be collectible from all persons, firms, corporations or associations of persons, engaged as dealers." The tax is payable by the dealer, who alone makes the reports, and since he is the person who originally disposes of the gasoline he pays this tax upon the gasoline sold, used, or consumed by him. Even if it be true that he passes on the tax to the consumer, and he does not, because the tax is laid on him alone, he certainly cannot pass on to the consumer the tax on gasoline which he uses or consumes. Furthermore, the tax receipt which constitutes the only legal evidence showing payment of the tax is issued by the supervisor of public accounts to the dealer and not to the ultimate consumer. It is the dealer who is obliged to

furnish the bond guaranteeing the payment of the tax before engaging in business as a dealer, and his failure to pay said tax and furnish bond causes the tax to become immediately delinquent. Likewise, all supervision is over the dealer and all penalties are imposed upon him. Nor is there anything in the language of these statutes that supports the contention that the dealer is to prepay the tax and is then to collect the tax from the public who is the real taxpayer. The contention of counsel that plaintiffs have made it a consumers' tax by billing the tax as a separate item and advertising the tax at filling stations raises a question that cannot possibly have any bearing on the interpretation of the statute. Central Transfer Co. v. Commercial Oil Co. et al., 8 Cir., 45 F.2d 400; State v. Wilson & Co., Inc., of Louisiana, 179 La. 648, 154 So. 636. The contention that plaintiffs have no interest to question the right of the state to collect this tax because of the fact that they are the tax collectors and not taxpayers is likewise without merit.

It is further urged that the primary objective of the statute was to levy the tax on all gasoline sold, used, or consumed, and that the allowance clause being an exception to that general objective should be strictly construed. Furthermore, that the plain meaning of the text itself showed that the allowance was for prospective handling losses between the time of the dealer's receiving the gasoline and his selling date and therefore could not be computed by deduction from sales, use, or consumption after the gasoline had been sold, used, or consumed, and when the dealer could no longer sustain any handling losses upon same. These questions have all been carefully considered in reaching the conclusions heretofore stated, and to avoid repetition only brief comment will be made to the claim that the allowance clause covers only prospective handling losses. In this connection it must be borne in mind that the original act did not permit or require the payment of the tax in advance, nor did it contain any provision about furnishing bond. Payment was permitted only after gasoline was sold, used, or consumed, consequently the importer or manufacturer could not pay in advance and use the 3 per cent. deduction to cover prospective losses. The supervisor of public accounts was under the duty of making the law work and he was charged with the duty

of interpreting the statute so as to make the 3 per cent. allowance effective, and he undoubtedly realized that this could only be done by deducting the allowance from sales at the time the tax was paid; a conclusion which seems inescapable since the quantities shown on the dealer's monthly report are the only quantities upon which it is possible to compute the amount of the tax to be paid and the amount of the deduction allowed by section 1 of the act.

While it is believed that the administrative construction placed upon this statute by those whose duty it was to collect the tax and to enforce the provisions thereof is the only construction which is consistent with all the provisions of the act and the only one which would give any meaning to the 3 per cent. allowance provision, the fact nevertheless remains that the statute is not clear or free from all ambiguity but in fact is most confusing. There is nothing in the legislative history of the original act that throws any light on its meaning other than the fact that the allowance provision was inserted in the act as an amendment by a committee of the Senate after the act had passed the House. This circumstance undoubtedly accounts for the fact that the allowance provision does not conform precisely with the wording of the remainder of the statute. However, be that as it may, the statute is inartistically drafted and the fact that this allowance provision of the statute is of doubtful meaning demands that great weight should be given to the construction placed upon it by the department charged with its execution. As stated in United States v. Jackson, 280 U.S. 183, 50 S.Ct. 143, 146, 74 L.Ed. 361: "It is a familiar rule of statutory construction that great weight is properly to be given to the construction consistently given to a statute by the Executive Department charged with its administration. United States v. Cerecedo Hermanos y. Compania, 209 U.S. 337, 28 S.Ct. 532, 52 L.Ed. 821; Robertson v. Downing, 127 U.S. 607, 8 S.Ct. 1328, 32 L.Ed. 269; United States v. Healey, 160 U.S. 136, 16 S.Ct. 247, 40 L.Ed. 369; and such construction is not to be overturned unless clearly wrong, or unless a different construction is plainly required. United States v. Johnston, 124 U.S. 236, 253, 8 S.Ct. 446, 31 L.Ed. 389; Hawley v. Diller, 178 U.S. 476, 488, 20 S.Ct. 986, 44 L. Ed. 1157."

Again in McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 51 S.Ct. 510, 512, 75 L.Ed. 1183, the court said, "The re-enactment of the statute by Congress, as well as the failure to amend it in the face of the consistent administrative construction, is at least persuasive of a legislative recognition and approval of the statute as construed. See National Lead Co. v. United States, 252 U.S. 140, 146, 40 S.Ct. 237, 64 L.Ed. 496. We see no reason for rejecting that construction."

In State v. Central Bank & Trust Co., 143 La. 1053, 79 So. 857, 859, the court quoted approvingly Sutherland on Statutory Construction, paragraph 309, saying: "The practical construction given to a doubtful statute by the public officers of the state, and acted upon by the people thereof, is to be considered; it is perhaps decisive in case of doubt. This is similar in effect to a course of judicial decisions. The Legislature is presumed to be cognizant of such construction, and after long continuance, without any legislation evincing its dissent, courts will consider themselves warranted in adopting that construction."

Therefore, even if it be that the supervisor of public accounts in this case was in error as respects his original ruling, such error would not necessarily justify a change in the ruling after it had been in effect for more than 8 years. State v. Comptoir National D'Escompte de Paris, 51 La.Ann. 1272, 1281, 26 So. 91. Indeed the doctrine of contemporaneous construction is so well recognized that it will serve no useful purpose to multiply the authorities. Applying the doctrine of these cases to the solution of the question under consideration, I have reached the conclusion that the administrative interpretation and cnstruction given these enactments by the officers of the state were entirely reasonable and consistent with all the provisions of the statutes, and that this long-continued administrative interpretation should not be disturbed where as here the allowance provision of the statutes is ambiguous and of doubtful meaning.

It follows that the preliminary injunctions herein granted should be perpetuated and that plaintiffs should have judgment in accordance with the views herein expressed declaring as against the defendants that the plaintiffs were entitled to deduct, and are hereinafter entitled to deduct, the 3 per cent. allowance, as they have done since the effective dates of the enactments here in controversy. Decrees to this effect may accordingly be submitted.

If it is not believed that this opinion is a sufficient compliance with rule 70½ of the Equity Rules, 28 U.S.C.A. following section 723, findings of fact and conclusions of law may be submitted; otherwise, this opinion will stand as the findings of fact and conclusions of law in this case, and be deemed to constitute the formal decision thereof.