Dear Mr. Sexton:
This opinion is an answer to the Commission's request for clarification of our Opinion No. 75-124, dated April 17, 1975.
In the second full paragraph on page six of the opinion it was stated:
 In addition, the funds received must be used within the prohibitions on the use of state funds found in the Constitution and laws of Louisiana.
First, you inquire whether these prohibitions would mean that the individuals charged with the responsibility of expanding (sic) the funds received by the subject associations would be subject to the Louisiana Code of Governmental Ethics, R.S.42:1101 et seq., the code being part of the "laws of Louisiana."
Opinion No. 75-124 stated our reasons for the use prohibitions quoted above. We said:
 Another conclusion flows when an association has as its primary source of income dues paid from public funds by public officials or agencies as membership subscriptions, and serves a public purpose and renders a public service. We are compelled to conclude that these facts would bring such an association under the general prohibitions on use of public funds found in the Constitution and laws of Louisiana.
Mr. R. Gray Sexton
p. 2.
 For example, such an association would be prohibited under Article VII, Section 14(A) of the new Constitution from loaning or donating their funds to private persons. Such a loan or donation would be doing indirectly with state funds what is clearly prohibited directly. It is axiomatic that such indirect loans or donations are prohibited if direct loans or donations are prohibited. Opinion No. 75-124, p. 5-6.
As in the example of a prohibited use of public funds quoted above, i.e., prohibition to donate or loan the funds to private persons, the term "use" contemplates the utilization of the public funds per se. As also quoted above, the policy behind such a prohibition is to prevent the subject associations from being a conduit for public funds to an end-use that is otherwise clearly prohibited.
Our reading of the Code of Governmental Ethics does not disclose a prohibition on the utilization of public funds per se. However, should the jurisprudence and administrative regulations under the Code, have interpreted the Code to impose such a prohibition then such a prohibition would apply to the public funds received by the subject associations. R.S. 42:1101, et seq.
In addition, our reading of the Code reveals that in general it applies to state employees and elected state officials, as defined in the Code. If the "individuals charged with the responsibility of expending the funds" are such employees or officials as defined in the Code then, of course, the Code would apply to them. If such individuals are not employees or officials, as defined in the Code, then the Code does not apply to them. It is our opinion that application of the Code obtains by its own provisions and the fact that an individual is responsible for the expending of public funds received by a subject association is immaterial to such application. See R.S. 42:1111(G); R.S. 42:1142(A).
Second, you inquire whether the public funds received by subject association may be used for political purposes or for a political contribution. It is the opinion of this office that the Constitution and laws of Louisiana clearly prohibit a subject
Mr. R. Gray Sexton
p. 3.
association from making either a direct political contribution or loan, or financing a political activity. Art. 11, Sec. 4. Const. of 1974; Art. 7, Sec. 14(A), Const. of 1974; R.S. 18:]48], etseq.
Third, you inquire whether the employees and representatives of a subject association would be subject to the same restrictions on political activities as other state employees.
If such employees and representatives are not otherwise state employees in the classified civil service, they do not become such because they are paid by a subject association whose primary source of income is public funds. Thus, it is our opinion that the restrictions on political activities by classified civil servants, contained in Article X, Section 9 of the new Constitution cannot be extended to cover employees and representatives of subject associations who are not otherwise state employees. If such employees and representatives are otherwise classified civil servants, then they would be subject to the restrictions on political activities contained in the new Constitution, their employment by or representation of a subject association notwithstanding.
However, it is also our opinion that employment by, or representation of, a subject association by a state employee or official is violative of the outside compensation and conflict-of-interest provisions of the Code of Governmental Ethics R.S. 42:1112, 1113, 1143.
In addition, if the political activities of the subject association and of its employees and representatives are paid for out of the public funds received by the association, such expenditures would be prohibited by the new Constitution. Article 11, Sec. 4., Const. of 1974.
Fourth, you inquire what restrictions would be placed on the employees and representatives of the subject associations as to political lobbying. We assume, from our information regarding the subject associations, that the Commission is particularly concerned with lobbying before the Louisiana Legislature and its committees.
Such employees and representatives, in our opinion, are subject to the lobbying restrictions contained in R.S. 24:51, etseq.
Mr. R. Gray Sexton
p. 4.
and in the Rules of the Louisiana House of Representatives and Senate.
In any case, the propriety of lobbying on the part of a subject association and its lobbyists, particularly if they are being compensated either directly or indirectly by public funds (see Opinion No. 75-124 at p. 5-6), would turn on the public purpose of the lobbying and the public service being rendered by the lobbyists.
For example, lobbying before the Legislature or its committees for a pay raise for the subject association's members, in our opinion, would be lobbying for a private purpose and would be rendering a private service. A subject association could not use public funds received as dues for such a private purpose, nor could such an association receive public funds as dues if such a private service was rendered by the association, its employees or representatives. Art. 7, Sec. 14(A), Const. of 1974; see opinion No. 75-124 at p. 3-4; cf. James v. Rapides Parish Police Jury,113 So.2d 88 La.App. 2d Cir., 1959) and City of Phoenix v.Michael, 148 P.2d 353 (Ariz. 1944).
On the otherhand, it is our opinion that lobbying before the Legislature by a subject association can serve a public purpose and provide a public service. For example, should the Legislature as a whole, or one of its committees, feel that its deliberations on a bill might benefit from the expertise or views that a subject association, its employee or representative could offer, then the providing of such expert advice or such views, in our opinion, would be providing a public service and serving a public purpose. Therefore, this would be a lawful activity of the subject association, and a lawful use of public funds. Cf. No. 10, the Federalist (Cooke, ed., 1961) p. 36 et seq.
Fifth, you inquire whether the prohibition contained in Opinion No. 75-124 would apply to expending the public funds received by a subject association for entertainment.
As outlined in Opinion No. 75-124 and also in the paragraphs above, to lawfully receive public funds a subject association must use those funds for a public purpose and in providing a public service. This would apply equally to expenditures for
Mr. R. Gray Sexton
p. 5.
entertainment. Which expenditures for entertainment are for a public purpose and are providing a public service, as opposed to a private purpose and private service, in our opinion must depend on the facts of a particular case. As a general guideline for distinguishing between public and private purposes and services, the Supreme Court has stated that a public purpose is "such a purpose as redounds to the public welfare." State v. Wilson Co.,154 So. 636, 639 (1934). Thus, it would be our opinion that there would be very few cases where the use of public funds for entertainment by a subject association would redound to the public welfare, i.e., serve a public purpose. In general, such entertainment expenditures would be suspect as a prohibited use of public funds.
Sixth, and lastly, you inquire whether a subject association, its members, employees and representatives would be subject to the travel expense regulations promulgated by the Division of Administration pursuant to R.S. 39:231, as amended.
The authorizing statute states that it applies to state officers and employees "in the discharge of the duties of their respective offices and positions in the state service." As is more fully explained in Opinion No. 75-124, it is our opinion that in, order for a private association to receive public funds from state agencies, officers or employees that are its members, the association must serve a public purpose and render a public service. Implicit in that opinion, and also in the James cases cited therein, is that such public purpose and public service must be directly related to "the discharge of the duties of their respective offices and positions in the state service" of the officer or employee that is a member of the association.
Therefore, it is our opinion that R.S. 39:231, and the administrative regulations thereunder, apply to all state officers and employees and to all travel expenses paid out of public funds, whether the payment from public funds is made directly by the State or indirectly through a subject association. This would also include the expense limitation regulations promulgated under authority of R.S. 39:231. The annual audit submitted by the subject association to the Legislative Auditor (see Opinion No. 75-124) provides the policing mechanism for compliance with R.S. 39:231 and its administrative regulations.
Mr. R. Gray Sexton
p. 6.
The unregulated travel expenditures possible if R.S. 39:231
and its regulations did not apply to a subject association would be use of a subject association as a conduit for public funds to a prohibited end-use. This is just the type of indirect use of public funds contemplated in the third paragraph above, and in Opinion No. 75-124.
If we can be of any further assistance, please contact us.
Yours very truly,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 By: __________________________ Kendall L. Vick Assistant Attorney General
KLV:rm
P.S. We assumed that the Commission would not meet during the Legislative session. Thus the delay in our response. We trust this has caused no inconvenience.
State of Louisiana
DEPARTMENT OF JUSTICE WILLIAM J. GUSTE, JR. April 7, 1974 7TH FLOOR ATTORNEY GENERAL 2-3-4 LOYOLA BUILDING NEW ORLEANS 70112