(C. D. 1415)

J. E. BERNARD & COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 13, 1952)

*Wallace & Schwartz* (*Joseph Schwartz* and *Barnes, Richardson & Colburn* (by *Edward N. Glad*) of counsel) for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*Arthur R. Martoccia*, special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: A machine described on the consular invoice as "One 40A Patent 5-Roll Vertical Chocolate Refiner" imported for the account of E. J. Brach & Sons, manufacturer of confectionery, includ-

ing chocolate, located in Chicago, Ill., was advisorily returned for duty by the appraiser as a "food grinding machine."

The consumption entry describes the merchandise as "4 Cases: Machines NSPF for manufacturing chocolate or confectioners [sic] Vertical Chocolate Refining W/out motor."

The collector of customs assessed duty upon the importation at the rate of 27½ per centum ad valorem pursuant to the provision in paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372) for "all other machines, finished or unfinished, not specially provided for."

It is the contention of plaintiff that the machine should be classified and subjected to duty at the rate of 15 per centum ad valorem pursuant to said paragraph 372, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, effective January 1, 1948.

Paragraph 372, as modified, *supra*, reads so far as pertinent here:

Machines, finished or unfinished, not specially provided for:
> Machines for packaging pipe tobacco; machines for wrapping cigarette packages; * * * _____10% ad val.
>      *      *      *      *      *      *      *
> Other (except wrapping and packaging machines; *food grinding* or cutting machines; machines for determining the strength of materials or articles in tension, compression, torsion, or shear; machines for making paper pulp or paper; *machines for manufacturing chocolate* or confectionery; and internal-combustion engines). [Emphasis added.] _____15% ad val.

Plaintiff in its brief states the issue in the case as follows: "The important issue is whether or not machines of this type are chiefly used as food grinding or chocolate manufacturing machines," which is based upon the doctrine of chief use expressed in *United States* v. *Spreckels Creameries, Inc.*, 17 C. C. P. A. (Customs) 400, T. D. 43835, and numerous cases cited therein.

As indicated above, the collector of customs classified the importation as a machine, not specially provided for, in accordance with paragraph 372 of the statute. Plaintiff claims that it should be classified pursuant to said paragraph 372, as modified. However, to come within the modified provision it is incumbent upon the plaintiff to establish that the imported machine is not within the enumeration of machines in said paragraph, as modified, which are expressly excepted from the benefits of the 15 per centum rate provided in the trade agreement. As will appear *infra*, we believe plaintiff has failed to sustain its burden.

Paragraph 372, as modified, *supra*, so far as pertinent here, specifically excepts from the classification of "machines, finished or unfinished, not specially provided for" which are subject to a 15 per centum assessment, the following items:

> * * * food grinding or cutting machines; * * * machines for manufacturing chocolate or confectionery; * * *.

At the trial testimony was introduced primarily for the purpose of aiding the court to determine whether or not the imported machine was chiefly used as a food-grinding machine or as a machine for manufacturing chocolate.

Plaintiff offered the testimony of one witness, Joseph Gottschalk, who testified in substance that he had been employed by E. J. Brach & Sons for 13 years and during the past 7 years was foreman in the chocolate-making department, supervising the intermediate stages of the manufacture of chocolate; prior to that time, he had served as mechanical foreman in the chocolate-machine department; previously he had been in the employ of J. M. Lehmann & Co., machinery manufacturer, designing, erecting, installing, and servicing not only chocolate machinery, but also machinery used in manufacturing soap and paint.

When asked to describe the various processes entering into the manufacture of chocolate, Gottschalk gave the following testimony:

Well, you take your imported cocoa beans, as we receive them from all parts of the world, South America, Africa, and so forth. We take those beans; we clean them of any foreign material, such as dirt, stones, iron, etc. Then we roast them. Then we crack them open, remove shells and any light particles, such as dust, again. After that we grind them and make a chocolate——

Q. Just a moment. After you remove the shell what remains is the nib; is that right? Is that called the cocoa nib?—A. Cocoa nib.

\* \* \* \* \* \* \*

The cocoa nib is ground and a liquid results from the grinding of the cocoa nib which is called a cocoa liquor. After that stage you mix your sugar, your milk powder, if you make milk chocolate, and skimmed milk or whatever may go into the particular type of chocolate you are making. You mix that through the cocoa liquor and then you take that paste—after mixing it, it will come out as a paste form—you take that paste and put it over the 5-roll refiner and grind it.

Q. And what comes out of that? What is the resulting product which comes out of the refiner?—A. A fine powder.

\* \* \* \* \* \* \*

Well, it's a chocolate powder.

\* \* \* \* \* \* \*

After that process, of course, you would have to take your chocolate powder and put it in large or any type of mixer, rather, and add cocoa butter and with a lecithin flavor, such as vanilla and coumarin, or any other type of flavor that you may want and liquefy that powder into a liquid form. Then from that stage you take the liquid form and put it into conches or bramley and develop your flavor, your characteristic chocolate flavor, and at that stage then you determine your viscosity, your fluidity of your chocolate, which, of course, differs for every type of candy you use and the amount of cocoa butter depends on the fluidity that the chocolate will reach. In other words, the more cocoa butter you have in it the more liquid your chocolate mass will become.

It appears that the imported machine in controversy was installed in the plant of E. J. Brach & Sons and that it is one of the refiners which was used "in a battery of refiners" in performing the operations

above described. When asked what was the raw material which was introduced into the refiner in controversy, the witness testified:

Cocoa liquor. In other words, processed cocoa beans, milk powder, powdered sugar, skimmed milk powder and that is about all.

He added that the refiner reduced the mixture to a very fine powder.

He was also asked: "When does it become chocolate?" and replied: "Not until it reaches its final stage of going through the whole cycle of manufacturing including your conching, your mixing of other raw materials that go into your final chocolate. I mean it doesn't become a product known as chocolate until every ingredient is in there."

He also testified that he had built and installed the *same type* of machine as the 5-roll refiner which is involved in this case in the paint, soap, and ink industries. The witness insisted that the machines were interchangeable. "We have at times taken them out of paint places and converted them into chocolate mills or vice versa" by merely cleaning and painting them.

This latter statement in Gottschalk's testimony was flatly contradicted by defendant's witness Mueser which will be discussed *infra*. It appears from the testimony of Gottschalk that his first experience with the imported chocolate refiner was in March 1949. According to the witness Gottschalk, "It takes a series of machines and a series of stages to make finished chocolate."

Defendant introduced two witnesses. John H. Bornmann testified that for 36 years he had been employed as a chemist in the United States Food & Drug Administration and during that time had become familiar with many foodstuffs, including cocoa and chocolate products, and with technical writings concerning chocolate and cocoa. He defined chocolate as a liquor prepared by roasting and grinding the nibs of the cacao beans free from the shells and stated that chocolate is recognized as a food in the Food, Drug, and Cosmetic Act, citing as his authority a pamphlet containing extracts from the Federal Register of December 6, 1944, which was received in evidence as exhibit 1.

The second witness for the defendant was E. Edward Mueser who testified that he was president and director of J. M. Lehmann, Inc., manufacturer of processing machinery for the paint, ink, soap, and chocolate industries; that as president for 15 years, he managed and supervised the business in general; prior to becoming president, he had been secretary and treasurer of the company, and as a graduate engineer he was "a member of all planning committees on engineering and on processing within our plant." From 1919 to 1949, except for an intermission of 9 years, Mueser was very active as an engineer in the construction and supervision of the Lehmann plant. He knew the previous witness Gottschalk at the time the latter was associated

with the Lehmann company as a skilled mechanic "in our assembly grouping," where he worked under the immediate supervision of a foreman, and knew also that Gottschalk's duties did not include any designing operations. He described the design and operation of the machine under consideration as follows:

Chocolate refiner is a machine utilizing a hollow roll of hard metal, the roll is water cooled, a series of such rolls in contact with each other operate at differential speeds, the chocolate to be refined is fed at one position, and differential speeds cause the material to be carried from one roll to another until it finally is taken off what is known as a thin steel blade, it is scraped off and has been refined due to the rubbing of these rolls at the different passes, a five roll mill gives four such passes, and in these passes, these processing zones, the chocolate is refined. That is, the fibrous material is dispersed through the cocoa butter, which acts as a vehicle for the fibrous and solid materials.

Mueser also testified that his company sold refiners to soap industries but that the latter are different from chocolate refiners for the reason that "Soap requires considerably more power to be processed. The machine must therefore be built more rugged and stronger. The chocolate machine is usually built with cast iron gears. In the soap machine we utilize steel gears." He also pointed out other differences in the machines and, when asked if the machines were interchangeable, he testified that "Some rebuilding and some changes in its characteristics would be made if it is to do successful work in the other industry," and that the same differences and conditions apply to the refiners used in the ink and paint industries. To quote further from his testimony:

Q. In your opinion, could the chocolate five roll refiner as made by Baker Perkins Ltd [manufacturer of the subject machine] be used in a paint, ink, or soap factory?—A. It could be used, but not very successfully. I never heard of such an attempt.

Q. Would there have to be changes made in the machine as originally designed in order to adapt its use for such purposes?—A. Yes.

On cross-examination, the witness was further interrogated as to the interchangeability of the chocolate refiner and those used in the paint, soap, and ink industries and stated that in order to use a chocolate refiner in these other industries "It would have to be rebuilt"— the gears would have to be replaced—"You would have to dismantle that and substitute those parts that were not wanted with other parts." In the following cross-examination, Mueser specifically refuted the testimony of Gottschalk who testified that a chocolate refiner could be used in the paint industry after being merely cleaned and painted. To quote:

X Q. Mr. Mueser, let's put it the other way around. Can a refiner which was used in the paint industry be used for—be used in the chocolate industry? I mean, after being cleaned up, of course.—A. No, it cannot, it cannot successfully be used.

Mueser admitted, however, that Gottschalk had an opportunity to become thoroughly familiar with the refiner. With respect to his own experience, Mueser testified:

I have been associated with the utilization of machinery for processing chocolate, with a short intermission for approximately 30 years. I am thoughtfully reviewing this period. I know of no case where a machine built specifically for processing chocolate has ever been used without modification or major changes for the processing of soap, paint, or ink.

Mueser expressed the opinion "that in the United States there are more five roll refiners refining chocolate than all other processing purposes to which it is put in other industries."

In our opinion, the weight of competent evidence establishes that the subject machine is chiefly if not exclusively employed in the manufacture of chocolate. It is clear from the testimony in the case that chocolate is not produced by any single machine but by a series of machines, each of which plays its part in the conversion of the raw material into commercial chocolate.

In view of the conclusion we have reached herein, the question whether or not the imported machine is a food-grinding machine within the meaning of said paragraph 372, as modified, need not be considered.

As pointed out earlier in this opinion, it is incumbent upon plaintiff in order to succeed in its claim for classification pursuant to paragraph 372, as modified, *supra*, to demonstrate that the imported machine is not among those which are specifically excluded from the benefits of the 15 per centum rate of duty granted by the trade agreement modifying paragraph 372, *supra*. It has failed to prove that the machine in controversy is not chiefly used for the manufacture of chocolate.

In view of the foregoing, we find that the plaintiff has not succeeded in bringing the importation within the provisions of paragraph 372, as modified, *supra*, and that the decision of the collector of customs should be affirmed. The protest is therefore overruled.

Judgment will be entered accordingly.