BEFORE THE SECOND DIVISION, MAY 13, 1952

**No. 56658.**—Gallagher & Ascher Company *v.* United States, protest 144953–K/1954 (Chicago).

LAWRENCE, Judge:   This case presents the question whether a machine described on the consular invoice as "One 11CM Cocoa Liquor Grinding Mill" was properly classified by the collector of customs as a machine, not specially provided for, and dutiable at 27½ per centum ad valorem in accordance with the provisions of paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372), or whether, as claimed by plaintiff, it should be classified and assessed for duty at the rate of 15 per centum ad valorem pursuant to said paragraph 372, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, effective January 1, 1948.

THE STATUTES

Paragraph 372 of the Tariff Act of 1930, so far as pertinent here, reads:

* * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: * * *.

Paragraph 372, as modified by T. D. 51802, *supra*, is as follows:

Machines, finished or unfinished, not specially provided for:

\*          \*          \*          \*          \*          \*          \*

Other (except wrapping and packaging machines; food grinding or cutting machines; machines for determining the strength of materials or articles in tension, compression, torsion, or shear; machines for making paper pulp or paper; machines for manufacturing chocolate or confectionery; and internal-combustion engines), 15% ad val.

To succeed in its claim, it was incumbent upon plaintiff to establish by competent evidence that the machine in controversy is not among the exemplars enumerated in the excepting clause of paragraph 372, as modified, *supra*.

It is the contention of the defendant that the subject machine is a food-grinding machine or a machine used for manufacturing chocolate and, hence, excluded from the benefits of said paragraph 372, as modified.

When the case was called for hearing in Chicago, Ill., plaintiff introduced the testimony of Adolph Pfitzer who testified that he had been associated for 35 years with Bunte Brothers, the ultimate consignee in this case, manufacturer of chocolate, confectionery, candy, etc., and that he was "maintenance engineer in charge of all equipment and in charge of chocolate making"; that in his long experience with that company he was thoroughly familiar with the process followed by Bunte Brothers in the manufacture of chocolate from the raw materials.

He testified in substance that raw cocoa beans which come from South America or Brazil are put through a "cleaning machine, which takes care of the dust and other articles, and then they are transferred into roasting machines to be roasted and from there they go to a cracker and fanner  *  *  *  which removes the hulls and makes them in small particles." Cocoa nibs having been thus produced are placed in the cocoa-grinding mill which produces a liquid known as cocoa liquor; "the cocoa liquor is then taken and put into a melanger  *  *  *  that mixes the cocoa liquor with sugar and other ingredients that you put in, powder or vanilla, whatever you want to put in. It all depends what you make"; that the melanger produces a paste which is "then put into 5-roll refiners to be refined."

The witness further testified that the refiner produces a powder to which "Cocoa butter and flavor and so on" are added "to liquefy it again"; "We have then, after that, we have just the chocolate, unfinished product of chocolate."

When asked what is the next step, the witness replied:

That goes over to a conge.  *  *  *  That liquefies the sugar, liquefies the chocolate and smoothens the product, a process of approximately twenty-four hours.

After that, the product goes through a tempering device "To bring it down to a certain temperature, to get a gloss and finish and a certain hardness, a hardness that you need for covering your creams"; "Then you have the finished chocolate."

The witness testified that the imported machine had been installed in the Bunte factory; that he had seen it in operation many times; that he was, in fact, in charge of the machine; and when interrogated as to the function of the machine, he stated:

That machine just does take the nibs, cocoa nibs, and grinds it into a liquid. That is all the machine does.

Q.   Grinds it into cocoa liquor?—A.   Cocoa liquor, yes.

In the cross-examination of the witness Pfitzer, it appears that formerly, and in some factories today, certain manufacturers continue to use what is known as the "triple mill" instead of the imported machine for grinding the cocoa nibs and further processing the resulting product into chocolate.

At the Chicago hearing, upon motion of the defendant, the testimony of John H. Bornmann which was given in the case of *J. E. Bernard Company, Inc.* v. *United States*, 28 Cust. Ct. 240, C. D. 1415, decided concurrently herewith, was incorporated as part of the record herein.

Bornmann testified that he had been a chemist for 36 years with the Food & Drug Administration; that he had from time to time analyzed various foodstuffs, including cocoa and chocolate products; that he had read articles concerning those subjects and stated that in his opinion "Chocolate is a liquor prepared by roasting

and grinding the cacao beans free from the shells," and that "Chocolate is recognized as a food."

It appears from the record that this opinion was based upon definitions and standards of identity established by the Food & Drug Administration. The witness produced a pamphlet containing information which was originally published in the Federal Register, December 6, 1944, setting forth definitions and standards of identity for cacao products which are still in effect. This pamphlet was received in evidence as exhibit 1.

At a subsequent hearing in New York, defendant called E. Edward Mueser whose qualifications as an expert with regard to the nature, character, use, construction, and design of the machine in question were conceded. He identified exhibit A (machine marked X) as a photograph illustrating the imported machine and described its mode of operation as follows:

This machine consists of discs which were—which operate in opposition to each other. The cocoa nib, that is the interior of the cocoa bean which is to be ground is fed between these discs and is thus converted into a cocoa liquor.

He further testified in substance that the process above described is but one of the processes used in the manufacture of chocolate; that he knows of no single machine (except the "triple mill" above referred to) by which chocolate can be made from the raw materials; that the subject machine is used to perform one of the intermediate processes for converting the cocoa bean into chocolate; and that he never heard of said machine being used in the soap, paint, or ink industries.

On cross-examination, Mueser testified that "This machine or machines of similar type must necessarily take care of the first step in the production of chocolate and confectionery in so far as the nib must be refined, must be ground into liquor. * * * It is the first step in the production of cocoa. Cocoa is derived from the ground bean, from the cocoa liquor, so it is the first step in the manufacture of cocoa also."

When asked to explain the difference between cocoa and chocolate, the witness replied: "Cocoa is the product that came from the interior of the cocoa bean by grinding that nib, by removing a substantial part of the cocoa butter, which is in the natural bean about 55 per cent to 22 per cent for breakfast chocolate, and as little as 13 per cent for the type of breakfast cocoa, if I may correct that, as little as 13 or 14 per cent when the cocoa powder is used for bakery or other purposes, cooking purposes. * * * Chocolate requires the addition of sugar, occasional flavoring material and also more cocoa butter, a piece of chocolate has in its final composition a very substantial amount of sugar and other ingredients not derived from the cocoa bean, and an excess of cocoa butter obtained from the bean for the purpose of making the chocolate."

Enlarging upon this subject, the following testimony was given:

Q. Now if you start out to make a chocolate candy bar or confectionery, do you have at one stage cocoa before you arrive at the chocolate?—A. The division of processing starts right after the grinding of the cocoa nib, a part of the liquor goes to the cocoa butter department where butter is removed and now the present cake is reduced to a very fine powder form, refrigerated and packed, the other division, the cocoa liquor goes to the mixers, where you add sugar and other ingredients, mix it, and by the means of roller mills and further mixing to add more cocoa butter and, finally, conching, it is converted into chocolate products.

The witness stated that by reason of the additional sugar, chocolate is richer in food value than cocoa.

As this case was presented to the court at the trial and in the briefs of the parties, the primary question for determination is whether the machine in controversy is either a food-grinding machine or a machine for manufacturing chocolate.

If it falls within either classification it is, of course, by the terms of the statute, excepted from the benefits of paragraph 372, as modified, *supra*. As a corollary to that statement, in order that the machine be assigned to either of those classifications, it must be a machine chiefly used for the purposes indicated. See *United States* v. *American Express Co.*, 6 Ct. Cust. Appls. 494, T. D. 36124.

In order to succeed in its claim that the machine is not excepted from the benefits of paragraph 372, as modified, *supra*, it devolved upon the plaintiff to prove by competent evidence that the imported machine is not chiefly used either as a food-grinding machine or as a machine for manufacturing chocolate.

The uncontradicted testimony of plaintiff's witness, Pfitzer, and defendant's witness, Mueser, definitely establishes that the machine here under consideration is used solely for converting the cacao nib into what is known as chocolate liquor and that this is one of the intermediate steps in the production of chocolate from the cacao bean.

It also appears from defendant's witness, Mueser, that the cocoa liquor obtained as above described is not only the first step in the production of chocolate but also the first step in the manufacture of cocoa; that cocoa is produced by removing a substantial part of the cocoa butter, whereas to produce chocolate, it is necessary to add to the cocoa liquor, sugar, milk, and other ingredients. However, upon this record we are unable to find that this imported machine is not chiefly used for manufacturing chocolate.

Since it appears from the record that the imported grinding mill, like the refiner in the *Bernard* case, *supra*, which we held to be a machine for manufacturing chocolate, is used to perform one of the intermediate processes in the manufacture of chocolate from the raw material, and inasmuch as there is lack of proof that it is not chiefly used in the manufacture and production of chocolate, it would appear that the plaintiff has failed in its burden of proof that the machine in controversy is not among those which are excepted from the benefits of the trade agreement and, therefore, that the classification of the collector must prevail.

We may add that, applying the doctrine of the two cases cited below, we entertain no doubt in view of the record before us that the imported cocoa liquor grinding mill is, in fact, a machine for manufacturing chocolate within the meaning of said paragraph 372, as modified. See *United States* v. *American Express Co.*, *supra*, wherein "Fraises," described as abrading parts of machines which sharpen the knives of beet-cutting machines and used exclusively for that purpose, were held to be properly classified as "machinery for use in the manufacture of sugar" and *United States* v. *Godchaux Sugars, Inc.*, 11 Ct. Cust. Appls. 529, T. D. 39678, in which a retort used for the purpose of reclaiming norit, a carbon substance employed in the purification of sugar, was likewise held to be properly classified as sugar manufacturing machinery.

The plaintiff has failed to establish that the subject machine is not one which is chiefly used in the manufacture of chocolate. We, therefore, find it unnecessary to pass upon the alternative contention that it is not chiefly used as a food-grinding machine.

The protest is overruled and judgment will issue accordingly.